Parker *et al. v.* The State.

Filed Jan. 4, 1894.

———————

No. 17,098.

PARKER ET AL. *v.* THE STATE.

CRIMINAL LAW.—*Murder.*—*Threats.*—*Motive.*—*Evidence.*—In an action for murder, the State may prove, for the purpose of showing malice and motive, that the defendant or defendants had, on occasions previous to the crime charged, made threats of a general character, when the decedent was within the scope of the threats uttered.

SAME.—*Evidence.*—*Ill-Will.*—*Explanation of Action.*—*Cross-Examination.*—In such case, the court did not err in permitting a witness for the State, a policeman, to give his reasons for expelling one of the defendants from a saloon in the neighborhood of the decedent's drug store prior to the time of the alleged crime, the defense, on

Parker *et al.* *v.* The State.

cross-examination, having attempted to show that the acts of the witness in the expulsion were prompted by malice and ill-will.

SAME.—*Evidence.*—*Cross-Examining Defendant as to Previous Arrests and Prosecutions.*—In a criminal action, where the defendant testifies in his own behalf, such witness may be cross-examined as to certain arrests and prosecutions against him in the past, for the purpose of discrediting his testimony, the extent of such cross-examination being largely in the discretion of the trial court.

SAME.—*Evidence.*—*Res Gestæ.*—*Mere Narration.*—*Murder.*—Where, in an action for murder, the decedent, immediately after being shot in his drug store, ran up stairs, and, falling into his wife's arms, exclaimed: "My God, Maida, I am shot. Those colored fellows that were in there when you were there are the ones that shot me," his assailant not being present but having fled, such declaration, as to who shot him, is not admissible in evidence as part of the *res gestæ,* being a mere narrative of a past occurrence.

SAME.—*Alibi.*—*Instructions to Jury.*—In such case, where the court, among other things, instructed the jury, on the question of *alibi,* that "the failure of either of the defendants to account for his whereabouts during all the time within which the offense might have been committed, is not of itself a circumstance tending to prove his guilt, *but a failure of this character may be properly considered by you in connection with any other evidence in the case tending to prove guilt,* if you find that there is such," that part of the instruction in italics is erroneous.

SAME.—*Defendant.*—*Right to Have Jury Instructed.*—A defendant in a criminal action has the right to insist that the court instruct the jury on all legal questions necessary to enable them to reach a true verdict, and a denial of such request will amount to error.

EVIDENCE.—*Expert Testimony.*—*Qualification to Testify.*—To entitle one to testify as an expert, no precise knowledge is required. Such witness may testify if he shows such acquaintance with the subject as to qualify him to give an opinion, the weight of his testimony depending upon the extent of his knowledge.

From the Marion Criminal Court.

*J. B. Kealing, M. Hugg* and *R. W. McBride,* for appellants.

*A. G. Smith,* Attorney-General, and *J. W. Holtzman,* Prosecuting Attorney, for State.

COFFEY, J.—The appellants were jointly indicted in the Criminal Court of Marion county, upon a charge of murder in the first degree.

The indictment charges, among other things, that the appellants, at Marion county, on the 14th day of April, 1893, murdered one Charles W. Eyster by then and there shooting and mortally wounding him.

A trial by jury resulted in a verdict finding them guilty as charged, and affixing the death penalty.

Over a motion for a new trial, the court rendered judgment on the verdict, from which this appeal is prosecuted.

The appellants assign as error the action of the court in overruling their motion for a new trial.

The uncontradicted testimony in the case establishes the fact that between nine and ten o'clock on the evening of the 14th day of April, 1893, two colored boys entered the drug store of Charles W. Eyster, at the northwest corner of Mississippi and Third streets, in the city of Indianapolis, and purchased a set of dice. Almost immediately after stepping out of the store they returned, and one of them shot Eyster with a revolver, inflicting a wound, from the effects of which he soon thereafter died. The effort of the State, on the trial of the cause, was to identify these appellants as the persons who were guilty of the murder of Mr. Eyster. The evidence introduced by the State for that purpose was chiefly circumstantial.

For the purpose of showing malice and a motive on the part of the appellants to commit the crime with which they were charged, the State was permitted to prove that each of the appellants had been arrested by the police force of Indianapolis, at times prior to the murder, and taken to the drug store at which Eyster was shot. On one occasion Mr. Eyster used the telephone in his store for the purpose of calling the patrol wagon to convey one of the appellants to the station house, and on another occasion Eyster's clerk used the telephone for a like purpose. The State, over the objections of the ap-

pellants, was permitted by the court, to prove threats of a general character, made by one of the appellants to the effect that he would get even with all those connected with his arrest.

In the admission of this testimony, we do not think the court erred. It is true that threats, to be admissible, should have some reference to Mr. Eyster, but the threats introduced in evidence in this case, when taken in connection with the other evidence in the case, were broad enough, we think, to include him. It was shown that the appellant making the threats, while under arrest at the drug store, became angry at the clerk who used the telephone, and used very abusive language towards him, and that he entertained a bitter feeling towards the store and the persons connected with it.

To authorize proof of threats, whether general or special, it is only necessary to show that the person injured is within the scope of the threats uttered. *Whitaker* v. *Commonwealth*, 13 Ky. L. 504; *Hopkins* v. *Commonwealth*, 50 Pa. 9; *State* v. *King*, 9 Mont. 445; *Hodge* v. *State*, 26 Ala. 11; *Brown* v. *State*, 105 Ind. 385.

The court did not err, in our opinion, in permitting Policeman Ward to give his reasons for expelling one of the appellants from a saloon in the neighborhood of Eyster's drug store, at a time prior to the shooting of Eyster. Ward was a witness for the State, and for the purpose of weakening his testimony the appellants attempted to show, by cross-examination, that the act of the witness, in expelling the appellant from the saloon, was prompted by malice and ill-will. By this course of examination, the appellants made it competent for the State to ask the witness as to the reasons for such expulsion.

Nor did the court err, in our opinion, in permitting Elmer Clingler to testify as an expert, upon the ground

that he did not possess sufficient information to authorize him to give an opinion.

The extent of a witness's knowledge does not necessarily determine his competency. No precise knowledge is required if the witness shows such acquaintance with the subject as to qualify him to give an opinion, the weight of his testimony depending upon the extent of his knowledge. *City of Terre Haute* v. *Hudnut*, 112 Ind. 542; *Cole* v. *State*, 75 Ind. 511.

The appellants, on the trial of the cause, testified in their own behalf, and the State, on cross-examination, over their objection, was permitted to ask them as to certain arrests and prosecutions against them, occurring in the past, for the purpose of discrediting their testimony. It is contended that in this ruling the trial court erred.

We can not agree with the appellants in this contention. The testimony of an accused who testifies in his own behalf, should be subject to the tests applied to the testimony of any other witnesses. It is not to be supposed that the testimony of a witness who is morally depraved and an habitual law-breaker will, as a rule, be given the same credit as a witness who is of known moral character.

In the case of *Bessette* v. *State*, 101 Ind. 85, it was said by this court: "It is proper, within the bounds of propriety, to be controlled by the trial court, that the character and antecedents of a witness may be subject to a test on cross-examination, and that questions which go to exhibit his motives and interest as a witness, as well as those tending to show his character and antecedents, should be allowed."

The extent to which such cross-examination shall be allowed is largely in the discretion of the trial court. *City of South Bend* v. *Hardy*, 98 Ind. 577; *Conrad* v.

*State,* 132 Ind. 254; *People* v. *Clark,* 102 N. Y. 735; *People* v. *Cummins,* 47 Mich. 334; *Ruloff* v. *People,* 45 N. Y. 213; *People* v. *Court of Oyer and Terminer,* 83 N. Y. 436; *People* v. *Hooghkerk,* 96 N. Y. 149.

The trial court did not err in excluding testimony of experiments made by persons near the drug store at which the homicide occurred. *Jones* v. *State,* 71 Ind. 66.

Mrs. Eyster, the widow of the deceased, testified on the trial of the cause, that she and her husband lodged up stairs over the drug store in which Eyster was shot; that she went up stairs to prepare the bed for the purpose of retiring for the night, leaving the appellants and her husband in the store. Soon after reaching the front room up stairs she heard the report of a revolver, which seemed to be immediately under where she stood; that she ran down the hall towards the stairway leading to the rooms above the drug store, and when about midway of the hall her husband fell into her arms and exclaimed: "My God, Maida, I am shot." I dragged him to the bed and he said: "Those two colored fellows stepped to the door and stepped back and shot me."

The prosecutor then propounded to the witness the following question:

"To refresh your recollection, I will ask you if he didn't say this: 'Those colored fellows that were in there when you were there are the ones that shot me.'"

To which the witness answered:

"Those are the words he used."

These declarations were admitted in evidence over the objection of the appellants.

It further appears from the evidence that the deceased was shot in the drug store, after which his assailant immediately fled, and was not present at the time these

declarations were made.   The declarations were admitted in evidence upon the ground that they were part of the *res gestæ.*

It is contended by the appellants, that in admitting this evidence the trial court erred.

It is a familiar rule that whatever constitutes a part of the *res gestæ*—the act under immediate investigation—is admissible as original evidence.   There is, in this State, no uncertainty or confusion as to the rule itself. In some jurisdictions much confusion and uncertainty have arisen in the effort to apply the rule and in the difficulty which sometimes arises, in a particular case, in determining when the principal act was at an end.   In the nature of things, however, every act has a beginning and end; and it is difficult to perceive how that which occurs after the principal act is at an end, can constitute part of the act under investigation.

It has been settled in this State, since the case of *Binns* v. *State,* 57 Ind. 46, that an act can not be varied, qualified, or explained either by a declaration which amounts to no more than a mere narrative of a past occurrence, or by an isolated conversation held, or an isolated act done, at a later period.

In the case of *Jones* v. *State,* 71 Ind. 66, it was said by this court:   "The length of the interval of time between the main fact and the statements can not be important, if such time elapsed as to make the statements, having regard to their form and substance, mere narration."

It may now be regarded as the settled law in this State, that a declaration which amounts to no more than a mere narrative of a past occurrence is not admissible in evidence as part of the *res gestæ.*   *Hall* v. *State,* 132 Ind. 317.

Had the assailants of Eyster met some one on the

street immediately after fleeing from the drug store, and had declared that they had shot him in self-defense, it is clear, we think, that they could not have given such declaration in evidence on the trial of this cause, yet such declaration would have been as much a part of the *res gestæ* as the declaration of Eyster as to how the shooting occurred. The declaration of Eyster, when he met his wife, that he was shot, was admissible, because it was explanatory of his then condition, but his other declarations as to who shot him and the manner in which the shooting occured, was a mere narrative of a past event. In admitting this evidence, we think, the learned judge presiding at the trial of this cause, erred.

The court, of its own motion, gave to the jury the following instruction:

"19. Evidence has been introduced on behalf of the defendants tending to prove an *alibi*, and if you should find, upon considering this evidence, that it is sufficient to raise a reasonable doubt in your minds as to whether the accused, or either of them, were at the place where the alleged crime was committed, then the accused, or the one as to whom such doubt arises, if it arises as to any, is entitled to acquittal; and the failure of either of the defendants to account for his whereabouts during all the time within which the offense might have been committed, is not of itself a circumstance tending to prove his guilt, but a failure of this character may be properly considered by you in connection with any other evidence in the case, tending to prove guilt, if you find that there is such."

So much of this instruction as informed the jury that a failure of the appellants to account for their whereabouts during all the time within which the alleged crime might have been committed was a fact which might be properly considered by them in connection with any

other evidence in the case tending to prove guilt, is, in our opinion, erroneous.

The defense of *alibi* stands precisely upon the same footing as any other defense, and evidence tending to support such a defense is sufficient to secure an acquittal if it raises a reasonable doubt of the guilt of the person charged. *French* v. *State*, 12 Ind. 670; *Howard* v. *State*, 50 Ind. 190.

In criminal cases, the entire burden is upon the State from the beginning, and the accused is not bound to explain anything, and his failure to do so can not be considered as a circumstance tending to prove his guilt. *Doan* v. *State*, 26 Ind. 495; *Clem* v. *State*, 42 Ind. 420.

This being true, for a much stronger reason the failure or inability of an accused to fully establish, by his evidence, a defense which he attempts to prove, should not be considered by the jury as a circumstance tending to show his guilt.

We are of the opinion that the court should have instructed the jury upon the subject of reasonable doubt, as prayed by the appellants. It is true that in this State the jury is the judge of both the law and the evidence, but it is nevertheless the duty of the court to instruct it as to the law. If the jury, in the exercise of its right to judge the law, should erroneously acquit the accused, there is no remedy for such error, for he can not be twice placed upon trial for the same offense, but if the jury, in the exercise of its right to judge the law, erroneously convicts one charged with crime, in open disregard of the instructions of the court, the error is at once corrected. Such is the every day practice. To the end that the jury may be correctly informed as to the law applicable to his case, and that he may not be erroneously convicted, a defendant on trial, charged with crime, has the right to insist that the court shall instruct the jury

We think the court also erred in refusing to instruct the jury, as prayed by the appellants, that so long as any juror entertained a reasonable doubt of their guilt, they could not be convicted. The jurors should have been instructed as to their individual responsibility. *Castle* v. *State*, 75 Ind. 146; *Fassinow* v. *State*, 89 Ind. 235; *Aszman* v. *State*, 123 Ind. 347.

Many other rulings of the trial court are complained of as error, but as they are of such a character that they may not arise upon another trial of this cause, we deem it unnecessary to examine them.

For the errors obove indicated, the judgment in this case must be reversed.

The judgment in this cause is reversed, with directions to the criminal court of Marion county to sustain the motion of the appellants for a new trial.

