231 Ind. 508 (1953)
109 N.E.2d 614
LaMAR ET AL.
v.
STATE OF INDIANA
No. 28,919.
Supreme Court of Indiana.
Filed January 5, 1953.
*509 William S. Spangler, Spangler & Strom, and Herman L. Key, of Gary, for appellants.
J. Emmett McManamon, Attorney General and William T. McClain and John Ready O'Connor, Deputy Attorneys General, for appellee.
JASPER, J.
Appellants were charged by affidavit with procuring a female as an inmate for a house of prostitution, under § 10-4211, Burns' 1942 Replacement. A plea of not guilty was entered, trial by jury was waived, there was a finding of guilty, and judgment and sentence followed.
Appellants assign as error the overruling of their motion for new trial.
The motion for new trial asserts that the finding of the court is not sustained by sufficient evidence and is contrary to law. Other grounds have been waived under our Rule No. 2-17 (f).
The pertinent part of the affidavit, filed on June 23, 1951, is as follows:

*510 "The undersigned, being duly sworn upon his oath says that on or about the 23rd day of June, A.D. 1951, at and in the County of Lake, and State of Indiana, the above named defendants did then and there unlawfully and feloniously procure one Diane Hamilton, a female, as an inmate for a house of prostitution located at 1533 Jefferson Street, Gary, Indiana, and by promises, threats and violence and by a device and scheme, did cause and encourage the said Diane Hamilton, a female person, to become an inmate of said house of prostitution at said 1533 Jefferson Street, Gary, Indiana, and by promises, threats, violence and by a device and scheme, cause, induce, persuade and encourage the said Diane Hamilton, an inmate of said house of prostitution to remain there as an inmate, then and there being contrary to the form of the statute in such case  and provided, and against the peace and dignty of the State of Indiana."
The evidence of Diane Hamilton, a witness for the State, reveals that she was a prostitute and knew both of appellants, having met appellant LaMar at a restaurant operated by the latter at 1533 Jefferson Street, in Gary, when the witness went there to inquire about a job working as a prostitute. Appellant McCully was not there at that time; she came in September or October. Appellant LaMar lived in the rear of the restaurant with another woman. Arrangements were made between the witness and appellant LaMar that Two Dollars out of every Five Dollars and Four Dollars out of Ten Dollars would go to appellant from each act of prostitution. The witness collected and divided the money. She paid no rent. The witness came there in August, 1950, and stayed until November, 1950. She came back two or three times after that, leaving for good in July, 1951. In June, 1951, other arrangements were made in which the witness was to divide the money equally with appellant LaMar. *511 During June, and up to the time the witness left permanently, in July, 1951, one-half of the money collected by the witness was paid to appellant LaMar. On one of the occasions when the witness returned, appellant McCully was there. The latter waited on customers in the restaurant, and gave appellant LaMar money from acts of prostitution. Appellant McCully and the witness worked five or six months "in the same place." When the witness returned after being gone for a period of time, she had a conversation with appellants  "I went and asked for my job back and I got it back, that's all I can remember." The witness testified that: "She (appellant LaMar) still didn't charge me any rent for my room." The reputation of appellants and the witness was shown to be that of prostitutes.
The above, in substance, is the pertinent testimony.
This court has often said that we cannot weigh the evidence, but will examine it to see if there is substantial evidence of probative value on each material element of the crime charged. Price v. State (1933), 204 Ind. 316, 184 N.E. 181.
The affidavit charges three separate acts under § 10-4211, Burns' 1942 Replacement  (1) that appellants procured a female to become an inmate for a house of prostitution; (2) by promises, threats, violence, and by a device and scheme, did cause and encourage a female person to become an inmate of a house of prostitution; and (3) by promises, threats, violence, and by a device and scheme, did cause, induce, persuade and encourage an inmate of a house of prostitution to remain therein.
The affidavit charges conjunctively three forbidden acts, under § 10-4211, Burns' 1942 Replacement, and the burden was on appellee to prove one of the acts *512 charged. Rosenbarger v. State (1900), 154 Ind. 425, 56 N.E. 914.
There is a complete lack of evidence of substantial and probative value against appellant, Frances McCully, to prove any of the acts charged in the affidavit, under § 10-4211, Burns' 1942 Replacement. Therefore the finding and judgment is contrary to law as to appellant, Frances McCully. Price v. State, supra.
It is necessary that we look to the evidence most favorable to appellee which would be pertinent to prove the acts charged to have been committed by appellant LaMar.
From the evidence as herein set out, there is no evidence to prove threats or violence; and the only evidence in the record bearing upon "the procuring" and "promises" and "by a device and scheme" appears as follows:
"Q. What were the circumstances under which you met?
"A. I told her I had heard about a place that she wanted a girl and she gave me the job.
"Q. Needed what kind of a girl?
"A. Nothing, but a girl who could hustle.
"Q. What business was she engaged in at that time?
"A. I don't understand the question.
Q. What was her occupation, what did she do?
"A. Well, she had this place, it was something like a restaurant and she lived in the back.
"Q. Where did you do this hustling that you tell us about?
"A. Well, she had a basement and we would take them to the basement, then later on she had an apartment over on the other side.
"Q. What do you mean on the other side?

*513 "A. It is North, her place, it is on the second floor, it is a three room apartment.
...
"Q. What was your arrangement with the Defendant, Minnie Lee LaMar with respect to your rent for your room?
"A. Well, I didn't pay any rent.
"Q. Did you have any conversation with her at that time about the rent?
"A. Well, I didn't pay any rent.
"Q. You can answer that "Yes" or "No," did you have any conversation about that?
"A. Yes.
"Q. What was that conversation?
"A. She told me that she would take part of my money, then I wouldn't have to pay the rent.
"Q. Take part of your money, what do you mean by that?
"A. She would take Two ($2.00) Dollars out of Five ($5.00) Dollars, and Four ($4.00) Dollars out of Ten ($10.00) Dollars.
"Q. For what?
"A. For what?
"Q. She would take the money, what money?
"A. That would be the money I would get for when I hustled there.
"Q. When you were paid by men what did you do with the money?
"A. I would give her her part and keep my part.
"Q. What was the arrangement, what were you to get and she to get?
"A. She was to have Two ($2.00) Dollars out of Five ($5.00) Dollars and Four ($4.00) Dollars out of Ten ($10.00) Dollars.
"Q. Did you at any time pay her more than that?
"A. On one occasion, I think, I gave her Sixteen ($16.00) Dollars out of Forty ($40.00) Dollars, something like that.

*514 "Q. How long were you there altogether, Diane?
"A. I went there in August and I stayed until about  oh  November, something like that, then I left, I can't be too sure about the date because I left and come back two or three times.
"Q. How long were you gone when you left the first time?
"A. The first time I think I come back about the first of December, because I was there for Christmas and New Years, a little after that.
"Q. Of last year?
"A. Yes.
"Q. You were there on the 23rd of June 1951?
"A. Yes.
"Q. When did you have your first tricks?
"A. The night that I went there, that night.
...
"Q. After your original arrangement about the disposition of the money, did you have a later conversation about a re-arrangement?
"A. Yes.
"Q. When was that?
"A. That was last year some time, I believe, and she told me that she would have to start taking half of my money then.
...
"Q. Did you then start paying her half of the money you took?
"A. Yes.
"Q. For how long?
"A. From June until I left there in July."
From this evidence we cannot say that any promises were made, or a device and scheme was entered into, to cause Diane Hamilton to become an inmate of a house of prostitution; nor is there any evidence to show any device, scheme, cause, inducement, persuasion, or encouragement of Diane *515 Hamilton to remain as an inmate of a house of prostitution.
In the case of State v. Topham (1912), 41 Utah 39, 45, 123 P. 888, 890, the court said:
"What are here the essentials of the charged offense? The state urges to cause, induce, and encourage an inmate of a house of prostitution to remain therein as such inmate. That is one essential; but it is not all the essentials declared by the statute. It declares that `any person who shall, by promises, threats, violence, or by any device or scheme,' cause, induce, etc., an inmate of such a house to remain therein, is guilty of an offense. The act or conduct of the person who shall, by a promise or threat or violence, or by a device or scheme, cause, induce, or encourage, etc., is a necessary `act constituting the offense,' and is a `particular circumstance of the offense to constitute a complete offense.' Without it no offense under the statute is committed. That is manifest from a reading of the statute."
The court further said (p. 59 of 41 Utah, p. 896 of 123 P.):
"Nowhere does the record disclose that the defendant asked, requested, or invited the inmate to remain, or that the defendant did or said anything that if the inmate did remain the defendant would do anything for her, or give her anything, or that the defendant declared or offered to do or not to do anything whatever on condition or an understanding of any kind that the inmate remain. Nothing of that kind was testified to by the inmate or by any one else."
And further (p. 60 of 41 Utah, p. 896 of 123 P.):
"The evidence, without dispute, shows that the inmate during the time she was in the stockade at will and voluntarily left it each morning and returned in the evening to ply her calling. Thus, looking at the portion of the evidence most favorable *516 to the state relating to the question in hand  the alleged promises  it is seen that the defective information is even in that particular also unsupported by evidence."
In 73 C.J.S., Prostitution, § 7e, p. 236, it is stated:
"In order to constitute the offense under a statute which denounces the use of promises, threats, violence, or any device or scheme to cause or induce a female to become, or to remain as, an inmate of a house of prostitution, it must appear that the means used were with that design and purpose, and that they were fairly calculated or naturally tending to produce the result ..."
In the case at bar there is no evidence to show that appellant LaMar made any promises or threats, or committed any acts of violence, to cause and encourage Diane Hamilton to become an inmate of a house of prostitution. Neither is there any evidence to show that, by promises, threats, and violence, and by any device or scheme, appellant LaMar did cause and encourage Diane Hamilton to remain an inmate of a house of prostitution. The evidence shows that the inmate could come and go as she wished; and, as a matter of fact, she left several times and returned of her own volition, and solicited her position in the house.
From the evidence, can we say that appellants procured an inmate, under § 10-4211, Burns' 1942 Replacement? We believe not. In Rosenbarger v. State (1900), 154 Ind. 425, 56 N.E. 914, supra, the court, in discussing another criminal statute other than the one here in issue, defined the word "procure" in the sense of "cause." Webster's New International Dictionary, 2d ed., p. 1974, defines the word "procure" as follows:

*517 "To contrive; to bring about by contrivance; to effect; cause; ... to prevail upon by persuasion; induce."
Black's Law Dictionary, 3d ed., p. 1437, defines "procure" as follows:
"In criminal law, and in analogous uses elsewhere, `to procure' is to initiate a proceeding to cause a thing to be done; to instigate; to contrive, bring about, effect, or cause.... To persuade, induce, prevail upon, or cause.... To `procure' an act to be done is not synonymous with to `suffer' it to be done."
In the case of State v. Speer (1930), 130 Kan. 226, 227, 285 P. 639, 640, in which the defendant was convicted of enticing and procuring a female to go from one place to another for the purpose of prostitution, the court said:
"Even if the immoral purpose be conceded, where is the evidence of persuading, inducing, enticing or procuring? It was held in State v. Rieman, supra, that `the word procure means to bring about, effect, cause.' The defendant must be shown to have done or said something to bring about, effect or cause the girl to go with him on the trip."
Here again the same reasoning may apply to the procuring of a female to become an inmate of a house of prostitution.
In the case of People v. VanBever (1911), 248 Ill. 136, 141, 93 N.E. 725, 727, the court said:
"The word `procure' means to begin proceedings; to cause a thing to be done. There can be no question, under the proof, that the plaintiffs in error caused others to bring the female ... into this State for the purpose of prostitution. The evidence showed, practically without contradiction, that both plaintiffs in error were actively urging, *518 advising and assisting in having the girl brought to their house of prostitution as an inmate."
In 73 C.J.S., Prostitution, § 7e, p. 235, "Procuring or Inducing Female to Become Inmate of House of Prostitution," it is said:
"The gravamen of the offense has been said to be the solicitation of the female for the prohibited purpose, and the gist thereof to be the procuring of a woman by some means named in the statute to enter or remain in the house of prostitution."
And further (p. 236):

"`Procure,' as used in these statutes, means to acquire or to get, and it necessarily implies the use of persuasion, solicitation, encouragement, and assistance in achieving the unlawful purpose; but the use of promises, threats, violence, or fraud are not necessarily included within the term."
The evidence reveals that Diane Hamilton initiated the proceedings by going to appellant LaMar and requesting a job with her and making the necessary arrangements. The fact that Diane Hamilton contacted appellant LaMar and made "arrangements" for the payment of monies received by her is not "procuring" within the meaning of the statute. People v. VanBever, supra. Diane Hamilton procured the position  appellant did not procure Diane Hamilton. There is a complete failure of evidence to support the material elements of the charge of pandering as prohibited by § 10-4211, Burns' 1942 Replacement. Appellants may have been guilty of another crime, but they are not guilty under this evidence of violating § 10-4211, Burns' 1942 Replacement.
The finding of the trial court is not sustained by sufficient evidence and is contrary to law.
*519 It was error for the trial court to overrule appellants' motion for a new trial.
Judgment reversed.
NOTE.  Reported in 109 N.E.2d 614.