DURRETT *v.* STATE OF INDIANA.

[No. 30,542. Filed November 1, 1967.]

*William S. Mercuri,* of Indianapolis, for appellant.

*John J. Dillon,* Attorney General, *Edwin K. Steers,* Former Attorney General, *Frederick J. Graf,* Former Deputy Attorney General, for appellee.

ARTERBURN, J.—The appellant was charged by affidavit of the crime of grand larceny. He was tried and convicted by a

jury and sentenced to serve not less than one nor more than ten years in the Indiana State Reformatory and fined $100.00 and costs.

The appellant assigns as error the overruling of his motion for a new trial. The five items contained therein are grouped under five headings in the appellant's brief, which challenge the sufficiency of the evidence.

For that reason, we first review the evidence most favorable to the State. This shows that Mrs. Alma Helena Siska, on October 10, 1962, discovered that her locked jewelry box in her bedroom had been pried open and certain earrings and some other items were missing. The next day officers from the police department made an investigation and discovered a set of antique earrings at a pawn shop in the city. The earrings conformed to the description Mrs. Siska had made. The operator of the pawn shop positively identified the appellant Durrett as the man who came into the store on October 10, 1962, the day the theft was discovered, and sold him the earrings, which were identified as State's exhibits. The pawnshop owner testified that the right thumb print on the dealer's pawn card was the appellant's. The appellant admitted that he had sold the earrings to the pawn dealer, but claimed he had purchased them in California. The appellant did not have a receipt for the claimed purchase nor could he identify the alleged seller.

The evidence further showed that Mr. Siska testified that he had purchased the earrings for his wife as a present in Estonia in 1925 on the occasion of the birth of their son; that he paid one hundred and eighty Estonian krone for them, which amounted to at least $200.00 in currency of this country. He identified the earrings. Mrs. Siska also stated: "Those are mine. I recognize them because I have always cleaned them around the large stone in the middle." We find no grounds for questioning the identity of the jewelry involved here. There is likewise positive evidence

as to the value of the earrings, since Mrs. Siska, the owner, testified that they were worth $200.00 or more.

The owner of the pawn shop, an expert, who had purchased these earrings from the appellant, testified:

". . . as a unit in this antique earring set-up they could bring anywhere from $200 to $250 . . . as a unit, they would probably sell for around $200 on a resale basis. . . ."

This appears to us to be competent and ample evidence as to the value of the property.

It is urged that there is no proof of how the appellant obtained the jewels, since there was no evidence that he was employed by Mrs. Siska or was ever in the Siska residence. However, the fact is conclusively shown that he did get possession of the jewelry shortly after the theft was discovered.

"Exclusive possession of property shown to have been stolen shortly after the larceny, unquestionably is a circumstance to be considered by the jury, and if the proof is made that such larceny was recently committed and there is no evidence to explain the possession of the defendants, a larceny conviction based on such evidence will be sustained on appeal." *Mims et al.* v. *State* (1957), 236 Ind. 439, 444, 140 N. E. 2d 878, 880; *Gilley et al.* v. *State* (1949), 227 Ind. 701, 88 N. E. 2d 759.

Some argument is made in the brief that the defendant has no burden of proof in a criminal case. We have here no such question before us. In every successful criminal prosecution there usually comes a time when the State establishes a *prima facie* case, giving consideration to all legitimate and reasonable inferences that may be drawn from the facts presented, which proves beyond a reasonable doubt that the defendant is guilty. At that point, unless the defendant sees fit to come forward with proof to rebut the *prima facie* case and convince the jury he is innocent, the jury, from the evidence presented to it, *may* convict the defendant. It appears to us that was the circumstance here. The State presented such a case. It thereby sustained the

burden of proof. The defendant failed to offer any explanation that convinced the jury.

The judgment is affirmed.*

Lewis and Mote, JJ., concur.

Hunter, C. J. and Jackson, J., dissent with opinions.

### DISSENTING OPINION

HUNTER, C. J.—I am unable to concur in the conclusion of the majority opinion and must respectfully dissent.

The majority holds that possession of stolen property shortly after a theft is *discovered* establishes a *prima facie* case showing defendant's guilt of the larceny beyond a reasonable doubt, unless he comes forward and rebuts the *prima facie* case and convinces the jury that they should believe his explanation thus casting upon the defendant the burden of proving his innocence. I know of no such rule of law and upon examination and analysis I do not believe the authorities cited in support thereof sustain such a rule. In *Mims et. al.* v. *State* (1957), 236 Ind. 439, 140 N. E. 2d 878 and in *Gilley et al* v. *State* (1949), 227 Ind. 701, 88 N. E. 2d 759 the stolen items were found in the possession of defendants a few hours after the *theft* and defendants were *linked* to the immediate vicinity of the theft. It is well settled that the scintilla of evidence rule does not obtain in Indiana and where the evidence is circumstantial it "must be so conclusive and compelling in character that it excludes every reasonable hypothesis of the presumption of innocence of the defendant." *Easton* v. *State* (1967), 248 Ind. 338, 228 N. E. 2d 6, and cases cited therein.

I read the cases decided by this Court dealing with the inferences arising from possession of stolen property to require other corroborating circumstances pointing to a guilty possession of the property or linking the defendant with the actual taking of the property. In this case, just as Judge Arterburn

---

* This case was assigned to the writer of this opinion on October 16, 1967:

pointed out in *Bruck* v. *State* (1963), 244 Ind. 466, 193 N. E. 2d 491:

". . . we have no conduct on the part of the appellant to arouse any suspicion, other than possession." Id. at 492.

Since the State's case rests solely on the ground that appellant had possession of a pair of earrings on October 10, 1962 and the exact date of the theft was unknown, I do not find sufficient evidence substantial in character to support an inference of larceny by the appellant. For the foregoing reasons the cause should be reversed and remanded with instruction to sustain appellant's motion for a new trial.

DISSENTING OPINION

JACKSON, J.—I am unable to concur in the conclusions of the majority opinion and dissent thereto.

Appellant was charged by affidavit with the crime of Grand Larceny. Trial was had before a jury resulting in a verdict of guilty as charged. The verdict was to the effect that defendant be fined $100.00, and that he be imprisoned for a term of not less than one year nor more than ten years, and that he be disfranchised and rendered incapable of holding any office of trust or profit for five years. The court sentenced the defendant according to such verdict and ordered defendant imprisoned in the Indiana State Reformatory. From such judgment stems this appeal.

The affidavit charging appellant, omitting caption, formal parts and signature, reads as follows:

". . . says that WILBERT ROBERT DURRETT on or about the 10th day of OCTOBER A.D. 1962 at and in the County of Marion in the State of Indiana did then and there unlawfully, feloniously take, steal and carry away the personal goods and chattels of MRS. JOHANNES SISKA to-wit: ONE (1) PAIR DIAMOND EARRINGS, then and there of the aggregate value of TWO HUNDRED DOLLARS ($200.00) in lawful money, then and there being. . . ."

The applicable criminal statute, under which appellant was charged and found guilty, then read:

"Whoever steals, takes, carries, leads or drives away the personal goods of another of the value of one hundred dollars or upwards is guilty of grand larceny, and, on conviction, shall be fined in any sum not exceeding five hundred dollars and imprisoned for not less than one year nor more than ten years, and be disenfranchised and rendered incapable of holding any office of trust or profit for any determinate period." Acts 1959, ch. 292, § 1, p. 741.

Appellant tested the sufficiency of the affidavit by Motion to Quash the same, which motion was overruled.

Appellant requested trial by jury.

At the conclusion of the State's evidence the appellant moved the court for a peremptory instruction to the jury directing his acquittal. The court denied the motion.

The defense submitted no testimony and rested, and appellant renewed his motion to the court for a peremptory instruction directing his acquittal. The court overruled the motion.

Appellant's Motion for New Trial, omitting caption, formal parts and signatures, is as follows:

"Comes now the defendant in the above entitled cause and moves the Court for a new trial thereof upon the following grounds and for the following reasons:

"1. The verdict of the jury is contrary to law.

"2. The verdict of the jury is not sustained by sufficient evidence.

"3. The Court erred in overruling defendant's motion for peremptory instruction to the jury for acquittal of defendant at the close of the State's case.

"4. The Court erred in overruling defendant's motion for peremptory instruction to the jury for acquittal of the defendant at the conclusion of all the evidence.

"5. The Court erred in admitting into evidence State's Exhibits numbered 2A & 2B, over the objection of the defendant.

"WHEREFORE, the defendant prays the Court for a new trial of said cause."

The court overruled the motion December 6, 1963.

Appellant's Assignment of Errors contained the single specification:

"1. That the Court erred in overruling the Appellant's Motion for a New Trial."

The evidence most favorable to the appellee may be summarized as follows:

Alma Helena Siska, a native of Estonia, testified that on October 10, 1962, she lived at 1230 North Dearborn, Indianapolis, Indiana. On that day she went to her bedroom to get some money from a jewelry box. She testified she found that the jewelry box was pried open and that a set of diamond earrings and some other things were missing. She testified that she wore the earrings only on holidays or when she went to visit friends. The last time she could remember wearing them was on July 31, 1962. She had not opened the jewelry box since October 6, 1962, but she was sure the earrings were then in the box. The earrings were 50 or 60 years old. They were purchased for her by her husband. She testified that the value of the earrings was $200.00 or more.

Mrs. Siska's husband, August Johannes Siska, testified that on October 10, 1962, he returned home from shopping downtown around 2:00 o'clock. His wife was crying. She told him there had been burglars in the house because money and jewelry were gone from her jewelry box. He identified State's Exhibit #2, 2A and 2B as the earrings he had bought for his wife 38 years ago when his second son was born. He purchased them in Tartu, Estonia, from an agent who purchased and sold antique jewerly. He estimated the value of the earrings to be $200.00 or more because he had paid 180 Estonian krone for them in 1925. The first time he saw the earrings after they were discovered to be missing was on October 13,

1962, at Sacks Eagle Loan, Inc. He and his wife were the only persons who had keys to their house.

Mr. and Mrs. Siska's son, Albert Siska, who also served as interpreter for his parents, identified State's Exhibit #2 as earrings he had seen in Estonia, in a displaced persons camp in Germany, and in Indianapolis in his mother's ears.

Ben Sacks, the owner of Sacks Eagle Loan, Inc., testified that he was in the business of taking merchandise in loan, buying and selling merchandise and that on occasion he buys and sells jewelry and precious stones. On October 10, 1962, the appellant, whom Mr. Sacks had known for several years, sold Mr. Sacks a pair of earrings, which were identified as State's Exhibit #2, 2A and 2B. Sacks paid the appellant $55.00 for the earrings and made out a pawn card. The appellant put his fingerprint, name and address on the pawn card. Sacks knew the name and address were correct because the appellant had previously bought, sold and pawned items in the store. He estimated the retail value of the earrings to be $200.00 to $250.00 and the wholesale value to be $55.00.

The appellant urges in his Assignment of Errors that the court erred in overruling his motion for a new trial. He has elected to group the five causes contained in the motion for new trial and support them by one argument since all the causes substantially relate to the question of sufficiency of the evidence.

If any essential allegation of the offense charged is not proved, the verdict is not sustained by sufficient evidence and is contrary to law. *Hawkins* v. *State* (1961), 242 Ind. 111, 177 N. E. 2d 40; *Baker* v. *State* (1956), 236 Ind. 55, 138 N. E. 2d 641; *LaMar* v. *State* (1953), 231 Ind. 508, 109 N. E. 2d 614; *Carrier* v. *State* (1949), 227 Ind. 726, 89 N. E. 2d 74; *Price* v. *State* (1933), 204 Ind. 316, 184 N. E. 181.

Under point one of his argument appellant claims there was no evidence of any "wrongful taking" by him, nor that he had

a probability of opportunity to take the earrings allegedly stolen. The record before us discloses that Mrs. Siska, owner of the earrings, stated that she last wore them about July 31, 1962, that she thought they last were in the jewelry box on October 6, 1962, and that she first noted they were missing on October 10, 1962. The record further shows the dwelling in which Mr. and Mrs. Siska lived was kept locked, that they alone had the keys to the house, that neither of them knew appellant, that appellant had never been admitted to or been a guest or a caller at or in their house, and that both Mr. and Mrs. Siska examined the house the day they found the earrings missing and found no evidence of breaking or entering into the house. There is no evidence of any trespass by the appellant on the property of the Siskas. There is no evidence that appellant was ever seen about the Siska home or in the neighborhood. There were no fingerprints, footprints, marks or other evidence at the scene of the alleged theft linking appellant with a larceny or burglary.

I agree with appellant's contention that the State's case rests solely on the grounds that the appellant had possession of a pair of allegedly missing earrings on October 10, 1962, the date they were reported missing.

In *Bruck* v. *State* (1963), 244 Ind. 466, 469, 193 N. E. 2d 491, 492, where there was a larceny charged of a belt sander, the court said:

> "The mere fact that the property is missing, without more, could hardly prove a larceny. There is no evidence of a 'break-in' to corroborate any taking nor is there any evidence of the defendant being in the store and having any access to or any opportunity to take the sander involved. There is no evidence linking the defendant with an actual 'taking' of the property other than the fact that he had possession of it ten days later."

One witness, a police officer, testified to the effect that on October 15, 1962, he had a conversation with appellant during which appellant stated he had sold the earrings to Sacks

and that he had purchased them for his wife in California approximately two and one-half years before. It is apparent that the police did not believe his story, and assumed he was guilty. Yet they testified they did not investigate or check the statement to either prove or disprove the same. Even if appellant's explanation was not true, that coupled with his possession does not of itself raise a presumption of guilt. If such were the law, any person in possession of stolen or "missing" articles is guilty of larceny, burglary or robbery unless he can convince a court or jury they should believe his explanation. The State cannot cast the burden upon the defendant to give a satisfactory explanation for in effect they would be casting the burden upon him to prove his innocence.

The law casts no burden upon the defendant. The burden of proof in a criminal case rests with the State, and it never shifts.

See *Dorak* v. *State* (1915), 183 Ind. 622, 624, 109 N. E. 771 where the court set out the following:

"In *Parker* v. *State* (1894), 136 Ind. 284, 292, 35 N. E. 1105, it is said: 'In criminal cases, the entire burden is upon the State from the beginning, and the accused is not bound to explain anything, and his failure to do so can not be considered as a circumstance tending to prove his guilt.'" See also: *Hill* v. *State* (1937), 212 Ind. 692, 11 N. E. 2d 141; *Biggs* v. *State* (1929), 201 Ind. 200, 167 N. E. 129.

The majority opinion contains the following statement, to-wit:

"It is urged that there is no proof of how the appellant obtained the jewels, since there was no evidence that he was employed by Mrs. Siska or was ever in the Siska residence. *However, the fact is conclusively shown that he did get possession of the jewelry shortly after the theft was discovered.*" (Emphasis supplied).

As I have pointed out, the record is completely devoid of any evidence even tending to indicate the appellant had ever

been in or near the Siska dwelling. There was no evidence that he was ever employed by Mrs. Siska or anyone about the premises, nor that he had ever had any contact or acquaintance with the Siskas. Thus, I agree that there was no proof of how the appellant obtained the jewels. In fact, there is no proof that he obtained the jewels within the purview of the statute under which he was charged. The record does not substantiate the second sentence quoted above that "the fact is conclusively shown that he did get possession of the jewelry shortly after the theft was discovered." On the contrary the date on which the earrings disappeared is not fixed in the record. The record discloses that Mrs. Siska last wore her earrings on July 31, 1962. On October 6, 1962, she put her watch in the jewelry box and thought the earrings were then in the box, but she did not look for them or see them at that time. There is no conclusive evidence that the earrings were in the box on October 6, 1962. Mrs. Siska did not discover the earrings were missing until October 10, 1962. The earrings could have disappeared at any time between July 31, 1962, and October 10, 1962. Even giving the evidence the interpretation most favorable to the State, the earrings could have disappeared at any time between October 6 and October 10, 1962.

In order to give the statement quoted from the majority opinion due consideration and proper weight, the conclusion stated therein must be viewed in the light of the language of the statute authorizing this prosecution and the language of the affidavit on which appellant was tried. The pertinent words of the statute read, *"Whoever steals, takes, carries, leads or drives away the personal goods. . . ."* (Emphasis supplied). The pertinent words of the affidavit read, ". . . did then and there *unlawfully, feloniously take, steal and carry away* the personal goods. . . ." (Emphasis supplied). The affidavit must contain the elements of the statute defining the crime. The State then bears the burden of proving beyond a reasonable doubt all the averments of the affidavit. The

State did not prove beyond a reasonable doubt that appellant did *"unlawfully, feloniously take, steal and carry away"* Mrs. Siska's earrings. In fact, there is not one iota of evidence that appellant took the earrings. If we accept the second sentence quoted above at face value, this court must concur in this dissent because the appellant cannot be guilty of the offense charged even if "he did get possession of the jewels shortly after the theft was discovered." If appellant did not get possession of the earrings until after the theft was discovered, he could not have taken, stolen and carried them away from Mrs. Siska.

The last paragraph of the majority opinion reads as follows:

> "Some argument is made in the brief that the defendant has no burden of proof in a criminal case. We have here no such question before us. In every successful criminal prosecution there usually comes a time when the State establishes a *prima facie* case, giving consideration to all legitimate and reasonable inferences that may be drawn from the facts presented, which proves beyond a reasonable doubt that the defendant is guilty. At that point, unless the defendant sees fit to come forward with proof to rebut the *prima facie* case and convince the jury he is innocent, the jury, from the evidence presented to it, *may* convict the defendant. It appears to us that was the circumstance here. The State presented such a case. It thereby sustained the burden of proof. The defendant failed to offer any explanation that convinced the jury."

The doctrine stated above can only be considered as erroneous dicta. It is not the law in the State of Indiana. The phrase *prima facie case* denotes the attainment of a certain stage in the proceedings in a civil action; the phrase is foreign to, inappropriate and has no place or meaning in the criminal code or procedure where the rule is entirely different from the civil code and procedure. In civil actions the proof required of the plaintiff to entitle him to a judgment is that he produce a preponderance of the evidence. In criminal actions the criteria as to the quantum of proof required of the

state is that it must be sufficient to convince the jury of the defendant's guilt beyond a reasonable doubt. In criminal cases all presumptions, all inferences and all doubts are and must be resolved in favor of the innocence of the defendant. Guilt is never presumed. It must be proved beyond a reasonable doubt. Hence the doctrinaire enunciated in the majority opinion is contrary to our state and federal constitutions, our statutes, precedent and ruling case law. No government can adopt such a doctrine without becoming a police state.

In the case at bar there was a complete and total failure on the part of the state to sustain its burden of proving the guilt of the defendant beyond a reasonable doubt.

In view of the determination that must be reached, it is not necessary to discuss the other issues properly preserved and presented here on appeal.

In my opinion the verdict of the jury was not sustained by sufficient evidence, therefore the verdict is contrary to law. The court committed error in overruling defendant's motion for a peremptory instruction to the jury for acquital at the close of the state's case, in overruling defendant's motion for acquital at the conclusion of all the evidence and in overruling defendant's Motion for a New Trial. The cause should be reversed and remanded with instructions to grant appellant's Motion For New Trial.

NOTE.—Reported in 230 N. E. 2d 595.