RICKI CHARLES MENTZER *v.* STATE OF INDIANA.

[No. 3-1272 A 100. Filed May 23, 1973.]

*Thomas L. Ryan,* of Fort Wayne, for appellant.

*Theodore L. Sendak,* Attorney General, *Robert F. Colker,* Assistant Attorney General, for appellee.

HOFFMAN, C.J.—Appellant was charged by affidavit with violation of the Uniform Firearms Act. Trial by jury in the Allen Superior Court, Criminal Division, resulted in a verdict of guilty and judgment was entered accordingly. Appellant was sentenced to five years in the Indiana State Prison.

On appeal, appellant raises two issues: 1) that a handgun, State's Exhibit No. 1, should have been suppressed; and 2) that prejudicial pretrial publicity violated appellant's right to a fair and impartial trial and the trial court's refusal to grant a change of venue from the county was an abuse of discretion.

The facts as established by the testimony of James F. Andrews, the first witness called by the State, are as follows:

On October 20, 1971, he was a detective with the Fort

Wayne Police Department. On that date, at approximately eleven o'clock P.M., he was in a car with two other police officers about 150 to 200 feet from a lighted parking lot at the Four Winds Motel in Fort Wayne, Indiana. He was on a surveillance with its focal point being a light lavender 1962 Oldsmobile in such parking lot. At a prearranged signal they drove onto the parking lot and saw three subjects at the rear of the 1962 Oldsmobile and appellant went toward his (Andrews) side of the car. Andrews got out of the car and informed appellant, whom he knew to be Ricki Charles Mentzer, that he was under arrest. He directed appellant to "face the car" and "place his hands up on the roof of the car and spread his legs apart." Almost "spontaneous" upon beginning a search appellant said, "I have a gun on me." Upon reaching appellant's waistline Andrews removed a gun and placed it on his own person. Over objection, the gun, a .45 caliber revolver, was admitted into evidence. On cross-examination this witness testified that the police had no arrest or search warrant and he personally did not see appellant commit any crime at the motel.

Appellant then filed a "Motion to Suppress Evidence." The jury was then retired in order for a hearing to be had on defendant's motion outside the presence of the jury. The court then made the following statement:

"COURT: Well, we'll also show on the record the fact that on February 28, 1972, the State and the Defendant were in Court on a pretrial conference on this case. At that conference the Court ordered the Defendant to file any motion to suppress that he might have in suppression of evidence within 30 days from February 28, 1972. At that time the cause was set for trial but no motion to suppress was so filed by the Defendant until now in the middle of the trial. All right, now with that record will you proceed, Mr. Dunn, with your motion to suppress."

The following facts were established at the hearing outside the presence of the jury.

On October 18, 1971, there was a burglary at the Hoosier Wire and Die in which over $78,000 in diamond dust was stolen. An informant contacted the Fort Wayne Police Department and stated that two people had approached him, the appellant and a man named Jack Hanks; that they wanted to sell the informant some diamond dust; and that they were going to bring the diamond dust to his farm and decide about selling it, and fix the price. The police set up both an eye surveillance and an electronic surveillance with a small concealed microphone on the informant.

The meeting took place at the time and place stated by the informant. The police heard the names of the men and a discussion concerning the diamond dust over the electronic surveillance. The officer who testified that he was "stationed right on the farm where I [he] could observe cars coming and going and close enough to identify drivers and persons in the car."

The informant told the police what conversation took place at the meeting and that there was to be another meeting at the Four Winds Motel parking lot at a certain time. Also, that a representative was to meet them there to buy the diamond dust. A stake-out was then perfected at the Four Winds Motel. No search warrant was obtained. Officer Andrews saw a 1962 Oldsmobile, light lavender in color, at informant's farm.

Although there are limits to the scope of a warrantless search incident to a lawful arrest, in the instant case if the arrest were lawful those limits were not exceeded. The question thus is: Was there a lawful arrest? If not, then the search was unlawful and the motion to suppress the gun should have been granted.

Whether the arrest was proper depends upon whether, at the moment the arrest was made, the officer had probable cause to make it.

Justice DeBruler, speaking for our Supreme Court, set out

the test in *Smith* v. *State* (1971), 256 Ind. 603, 271 N.E.2d 133, at 136:

"The test for probable cause to make an arrest is whether at the time of the arrest the facts and circumstances within the knowledge of the officers and of which they had reasonably trustworthy information were sufficient to warrant a prudent man of reasonable caution in believing that the arrestee had committed or was committing an offense. *Williams* v. *State* (1969), [253] Ind. [316], 253 N.E.2d 242; *Peterson* v. *State* (1968), 250 Ind. 269, 234 N.E.2d 488; *Beck* v. *Ohio* (1964), 379 U.S. 89, 85 S. Ct. 223, 13 L. Ed. 2d 142."

The validity of an arrest without a warrant depends upon the facts established in each case. *Wagner* v. *State* (1968), 249 Ind. 457, 462, 233 N.E.2d 236. Appellant raises the question of reliability of the informant. See: *Wong Sun* v. *United States* (1963), 371 U.S. 471, 83 S. Ct. 407, 9 L. Ed. 2d 441.

A police officer need not testify that the informant is reliable when the evidence itself and the facts established show the reliability of the informant.

In the instant case, an informant notified the police of being approached to assist in selling some diamond dust. There had been a burglary a few days before in which diamond dust had been stolen. The informant named the time and place the meeting was to take place. Surveillance by the police verified the meeting. He then informed the police of the time and place a second meeting was to take place at which time the diamond dust was to be sold. The second meeting took place at the time and place stated by the informant. At the second meeting the arrest took place. These facts certainly establish the reliability of the informant.

From all the information in possession of the arresting officer, he had sufficient probable cause to arrest the appellant.

After the arrest the search was reasonable in order to remove any weapon that might be used to resist arrest or effect escape. *Chimel* v. *California* (1969), 395 U.S. 752, 89 S. Ct. 2034, 23 L. Ed. 2d 685.

The second error raised by appellant is the trial court's denial of a motion for change of venue from Allen County due to alleged prejudicial pretrial publicity.

The appellant filed a verified "Motion and Affidavit for Change of Venue" stating that he could not have a fair and impartial trial before the judge or in Allen County because of the prejudice of the judge since he presided at the trial of a companion case, and the adverse publicity given the companion case. A change from the trial judge was granted but a change of venue from the county was denied. Attached to the motion to correct errors are four newspaper articles reporting the trial in the companion case. These articles appeared on or about June 14, 1972. The trial in the instant case commenced July 18, 1972.

In all criminal actions except cases punishable by death change of venue from the county is discretionary with the court. Criminal Rule 12, Indiana Rules of Procedure. *Bradley* v. *State* (1964), 245 Ind. 331, 198 N.E.2d 762.

It is, therefore, incumbent upon appellant to show a clear abuse of discretion by the trial court. Although no counter-affidavit was presented in opposition to the verified motion for change of venue from the county, the verified motion does not demonstrate clear and conclusive evidence so as to deny the court its right to exercise its discretion.

Our Supreme Court in *Bradley* v. *State, supra,* at 335 of 245 Ind., at 764 of 198 N.E.2d, said:

"Furthermore, even though there had been an unrefuted presumption from the evidence supporting the change of venue, the decision of the trial court in denying such change will not be considered as cause for reversal, unless it is made to appear from the voir dire examination of the jury that the appellant may have been denied a fair trial because of the bias and prejudice of the jury. *Smith* v. *State* (1960), 241 Ind. 1, 168 N.E.2d 199; *Carraway* v. *State* (1956), 236 Ind. 45, 138 N.E.2d 299; * * *."

Appellant does not address himself to the *voir dire* examination in his motion to correct errors or in his brief. The record is silent and shows only that "[e]xamination of jurors is now commenced *colpleted* [completed] and the State of Indiana and defendant accept the Jury composed of the following named persons, * * *."

The judgment of conviction appealed from is affirmed.

Sharp, J., concurs; Staton, J., concurs in result.

NOTE.—Reported at 296 N.E.2d 136.