JAMES R. PIERCE *v.* STATE OF INDIANA.

[No. 2-873A178. Filed August 12, 1974.]

*Philip R. Melangton, Jr., Raikos, Melangton, Dougherty & Christ,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Larry C. Gossett,* Deputy Attorney General, for appellee.

SULLIVAN, P.J.,—Appellant (Pierce) brings this direct appeal from a conviction of theft. Pierce attacks the conviction alleging the State's failure to present sufficient evidence to sustain the conviction. We agree with Pierce's contention, and must therefore reverse.

The evidence and reasonable inferences therefrom, most favorable to appellee (State) and the trial court's judgment, are as follows:

In July of 1970, Blanck Chevrolet of Brownsburg, Indiana, received a 1968 Ford Mustang in trade for a new automobile. The Mustang was promptly sent to Midwest Auto Auction, Inc., an Indianapolis-based corporation, pursuant to a consignment agreement between the two corporations.[1] Approximately one month later, in August 1970, the Mustang was discovered missing from Midwest's lot.

In July of 1971, Fred Burgess approached Pierce, a used car dealer, at his used car lot, and inquired about a 1968 Mustang. Burgess testified that he first noticed the Mustang,

---

1. Essentially, the consignment agreement provided that Blanck Chevrolet was to retain title to the automobile and transfer possession to Midwest for resale at auction. When Midwest auctioned an automobile, Blanck would then transfer title to the new owner. Testimony was adduced at the trial that such consignment arrangements were not uncommon among used car dealers.

which was parked in front of the lot, approximately three weeks prior to his inquiry. Pierce explained to Burgess that the automobile belonged to one "Phil", and that Phil had authorized Pierce to sell the auto. During the following week, Burgess and Pierce discussed the sale price; Pierce purportedly conferring with Phil as to his requested sale price. Thereafter, Pierce informed Burgess that the sale price was $1000.00 with a set-off for the Mustang's broken transmission. Burgess made a down payment and had the transmission repaired at which point Burgess took possession of the auto. At the time of sale, Burgess was given a bill of sale signed "Mike Tom (agent)".[2] Burgess continued making payments on the auto, and frequently made inquiry as to the title. According to Burgess, Pierce informed him that the title was held by a finance company, and that Burgess' payments were being turned over to Phil for retirement of the lien. Burgess received receipts for all payments made on the Mustang; the receipts being signed by several different individuals.

In April of 1972, Burgess sold the Mustang absent the title to Thomas Adams. Adams permitted two friends to use the automobile and they were stopped by the Indianapolis Police. The Mustang was on the stolen automobile list.

On May 11, 1972, Pierce was charged by affidavit with theft pursuant to IC 1971, 35-17-5-3, Ind. Ann. Stat. § 10-3030 (Burns Supp. 1973). Following trial without jury, Pierce was found guilty of the offense as charged, and sentenced to 1-10 years.

Pierce raises a number of issues on appeal, but we need deal only with his contention that the prosecution failed to present sufficient evidence to prove the essential element of knowledge. Pierce has consistently maintained this asser-

---

2. It appears from the record that Pierce, d/b/a Jim's Auto Sales, shared an auto lot with another used-car company owned by Mike Tom and John Roach. Further, the record discloses that the three would frequently assist each other by showing automobiles to prospective customers, taking installment payments, etc.

tion in his motion for discharge, his motion to correct errors, and his appellate brief. The State, in its brief, has not provided us with assistance on this point. We have therefore carefully reviewed the record.

The initial point of our inquiry is the statutory provision under which Pierce was convicted, IC 1971, 35-17-5-3, Ind. Ann. Stat. § 10-3030 (Burns Supp. 1973), which states in pertinent part:

"Theft in general.—A person commits theft when he (1) knowingly: (a) obtains or exerts unauthorized control over property of the owner; . . . and . . .
(2) either:
(a) intends to deprive the owner of the use or benefit of the property; . . . ."

This provision, and the interpretative decisional law, have established the rule that the State must allege and prove the essential element of knowledge. *Miller* v. *State* (1968), 250 Ind. 338, 236 N.E.2d 173; *Wilson* v. *State* (1973), 159 Ind. App. 130, 304 N.E.2d 824; *Shank* v. *State* (1972), 154 Ind. App. 147, 289 N.E.2d 315 (Rehearing denied). The legislature has provided the following definition:

"(8) 'Knowingly' means that a person knows, or acts knowingly or with knowledge, of: (a) the nature or attendant circumstances of his conduct, described by the section defining the offense, when he is consciously aware that his conduct is of such nature or that such circumstances exist. Knowledge of a material fact includes awareness of the substantial probability that such fact exists.
(b) The result of his conduct, described by the section defining the offense, when he is consciously aware that such result is practically certain to be caused by his conduct." IC 1971, 35-17-5-13, Ind. Ann. Stat. § 10-3040 (Burns Supp. 1973).

This element of knowledge or *scienter* may be proved by direct evidence or inferred from the facts and circumstances present in each case. *Capps* v. *State* (1972), 258 Ind. 565, 282 N.E.2d 833; *Miller* v. *State, supra; Shank* v. *State, supra.* Any such inference, however, must be

a logical deduction flowing directly from the circumstantial evidence which initiated the inference. *Miller* v. *State, supra; Wilson* v. *State, supra.*

Turning to the case at bar, we note that Pierce apparently acquired the stolen automobile nearly eight months after the theft. One may conclude that a prior possessor of the Mustang was the thief. Further, one may speculate as to the legitimacy of the business dealings between Pierce and "Phil". However, the evidence shows that consignment dealings are not commercially unusual in the used car business. Furthermore, the evidence establishes that Pierce kept the contraband Mustang in open and plain view of adjacent streets. There is no evidence from which it could be reasonably inferred that Pierce's predecessor in possession, Phil, was the thief or that Pierce knew that the car was stolen. More importantly, however, in the specific light of the crime charged, there was no evidence that Pierce knew that the property was ever in the lawful possession or ownership of Midwest Auto Auction, Inc. *See Gunder* v. *State* (1968), 250 Ind. 689, 238 N.E.2d 655. Our Supreme Court, in a factually similar case, discussed the effect of such evidence on the State's burden, and held:

> "To conclude from the sparse facts in this record that appellant had guilty knowledge would be to conclude guilt where only a possibility of guilt was proved." *Miller* v. *State, supra,* 250 Ind. at 345.

In *Wilson* v. *State, supra,* this court confronted another substantially similar factual background, and stated:

> "The circumstantial evidence merely raises a *suspicion* that defendant knew the car was stolen. 'It is not sufficient that the evidence merely tends to support . . . the material facts in issue . . . or that it establishes suspicion of guilt.' *Tom* v. *State* (1973), 261 Ind. 295, 302 N.E.2d 494, 39 Ind. Dec. 384." (Original emphasis) 304 N.E.2d at 826.

In the instant case, the State, as in *Wilson,* would have us parlay a number of disparate inferences in order to find the requisite element of knowledge. In this regard we are mind-

ful of our Supreme Court's words in *Manlove* v. *State* (1968), 250 Ind. 70, 232 N.E.2d 874, 881:

> "In summation, it may be said that while the prosecution has presented circumstance upon circumstance pointing in varying degrees to the probability of the appellant's guilt, still there are many notable voids in its case—too many to be ignored. . . . A verdict based merely upon suspicion, opportunity, probability, conjecture, speculation, and unreasonable inferences of guilt gleaned from the vague circumstances in the record of the evidence before us cannot be upheld. . . ."

The State failed to prove its case. We therefore reverse the trial court's judgment and remand for proceedings not inconsistent with this decision.

Buchanan and White, JJ., concur.

NOTE.—Reported at 315 N.E.2d 376.