**Dennis MOORE, Appellant,**

v.

**STATE of Indiana, Appellee.**

No. 3–579A129.

Court of Appeals of Indiana, Third District.

Oct. 25, 1979.

Ellen S. Podgor, Nicholls & Podgor, Crown Point, for appellant.

Theodore L. Sendak, Atty. Gen., Rollin E. Thompson, Asst. Atty. Gen., Indianapolis, for appellee.

STATON, Judge.

A jury found Dennis Moore guilty of two counts of Theft. Ind.Code Ann. § 35–43–4–2 (West 1978). He was sentenced to the Indiana Department of Corrections for a period of two (2) years. In his appeal to

this Court, he raises the following issues for our review:

(1) Whether the evidence was sufficient to sustain his conviction?

(2) Whether the trial court erred when it admitted evidence of a criminal scheme Moore had contemplated on a prior occasion?

We affirm.

I.

Sufficiency of the Evidence

Moore contends that the evidence was insufficient to establish that he committed Theft, as that offense is defined in Ind.Code Ann. § 35–43–4–2, *supra*:

"A person who knowingly or intentionally exerts unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use, commits theft, a class D felony."

He specifically argues that the State failed to show he (1) exerted *control* over the property of another, and (2) that he acted *knowingly* and *intentionally*.

■ Our disposition of Moore's concomitant assertions is governed by a well-settled standard and scope of review. We are constrained to examine only that evidence which is favorable to the State, together with the reasonable inferences which can be drawn therefrom. If, from that viewpoint, there is substantial evidence of probative value to support the jury's verdict, the conviction will not be set aside. *Henderson v. State* (1976), 264 Ind. 334, 335, 343 N.E.2d 776, 777.

■ The evidence reveals that on March 13, 1978 Antonio Gutherez took his wife to Dr. Polite's office on Indianapolis Street in Hessville, Indiana, for a pregnancy examination. After the examination, the couple discovered that their automobile, a red 1975 Mercury Montego, which Antonio had parked outside Dr. Polite's office, was missing.

The following day, Ethel Lape suffered a similar fate. Her green 1972 Ford station wagon disappeared from outside the South Shore Railway station in East Chicago, where she had parked it while she took a commuter train to and from her job in Chicago.

At approximately noon on March 14, Gary Police Officers Alton Brumfield and Walter Gilliam were on patrol when the police radio dispatcher informed them that an auto was being "stripped" near 17th and Van Buren Streets in Gary. Brumfield and Gilliam proceeded to the scene, where Brumfield witnessed two men placing a red object in a green Ford station wagon. The engine of the station wagon was idling. Brumfield testified that when the two men became aware of the officers' presence, they dropped the red object and fled down an alleyway. They were subsequently apprehended; a closer examination of the red object proved it to be a door from Gutherez's 1975 Mercury Montego, which was parked nearby. The Montego had been relieved of its driver's door, four wheels and tires, the ignition, and its radio. Inside the Ford station wagon were four wheels and tires, and ignition, a car radio, and a bag of tools. The Ford was later identified as Lape's vehicle; Moore was identified at trial by Brumfield as one of the two men he had witnessed placing the Montego door into the Ford station wagon.

For purposes of Theft, the act of exerting control over property is defined by statute:

"As used in this chapter, 'exert control over property' means to obtain, take, carry, drive, lead away, conceal, abandon, sell, convey, encumber, or possess property, or to secure, transfer, or extend a right to property."

Ind.Code Ann. § 35–43–4–1 (West 1978). Here, two automobiles had been removed from their separate locations to a common site, where Moore was seen working around them; the jury could reasonably infer from these facts that it was Moore who initially "took" the vehicles from the location where the respective owners had placed them. *Williams v. State* (1969), 253 Ind. 316, 253 N.E.2d 242. Moreover, direct evidence established that Moore was carrying away

part of the Mercury Montego; at the same time, the jury could reasonably infer from the fact that the Ford was idling that Moore had obtained control over that vehicle. *Compare, Williams v. State, supra; Winston v. State* (1975), 164 Ind.App. 85, 326 N.E.2d 592.

■ The jury was also justified in its conclusion that Moore acted knowingly and intentionally when he asserted control over the automobiles. Intent may be inferred from a voluntary commission of an illegal act and from the surrounding circumstances. *Rogers v. State* (1978), Ind., 373 N.E.2d 125, 127. The evidence reveals that Moore voluntarily exerted control over the property of another; in addition, Moore fled when his activities were suddenly interrupted by the arrival of Police Officers Brumfield and Gilliam.

The evidence was sufficient to support Moore's convictions for Theft.

## II.

### Admission of Evidence

At trial, Moore testified in his own behalf. During direct examination of Moore, his counsel elicited the fact that Moore had testified as a State's witness at a trial six years earlier. On cross-examination, the prosecutor engaged Moore in the following colloquy:

"Q. Dennis, let's talk about that '72 or '73 case you testified in? That was a homicide case?

"A. Yes, sir.

"Q. Dave Pickett was the owner of the Welcome Inn and he was robbed and shot one Sunday night, wasn't he?

"A. Yes, sir.

"Q. And you were in the bar just before the stick-up occurred, right?

"A. Yeah.

"Q. And Roosevelt Williams and Larry Bullock and Darryl James pulled the stick-up, right?

"A. Yes.

"Q. Roosevelt Williams asked you whether you wanted to join in to that stick-up, right?

"A. Yes.

"Q. You and Charles Anderson?

"A. Yeah.

"Q. And Isn't [*sic*] it true that you told Roosevelt yeah you were going to join the stick-up, but you backed out when you learned they were going to kill them?

"A. Yeah.

"Q. So you would have pulled the stick-up at the Welcome Inn that night?

"A. Yeah."

Moore argues that the admission of his testimony was erroneous and served only to prejudice the jury against him.

■ As the above-quoted portion of the record indicates, however, no objection to the testimony was tendered to the trial court at the time the prosecutor posed the questions to Moore. Moore has thus waived his right to challenge the admission of the evidence on appeal. *Harrison v. State* (1972), 258 Ind. 359, 281 N.E.2d 98, 99. Furthermore, in his Motion to Correct Errors, Moore merely made the general assertion that the "Court erred of law [*sic*] by allowing the admission of inadmissible evidence." This bald and general allegation of error also constituted a waiver of Moore's right to challenge the admission of the evidence, for it lacked the specificity necessary to preserve the question for appeal. Ind. Rules of Procedure, Trial Rule 59(G); *Spivey v. State* (1971), 257 Ind. 257, 274 N.E.2d 227, 230.

Affirmed.

GARRARD, P. J., and HOFFMAN, J., concur.