**Robert Allen GADDIE, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 2–278A41.**

Court of Appeals of Indiana, Second District.

Feb. 7, 1980.

Noble R. Pearcy, Indianapolis, for appellant.

Theodore L. Sendak, Atty. Gen., Wesley T. Wilson, Deputy Atty. Gen., Indianapolis, for appellee.

SULLIVAN, Judge.

Robert Gaddie appeals from his theft conviction following trial by jury. I.C. 35–17–5–3(1)(a) (Burns Code Ed. 1975).[1] His only contention on appeal is that the evidence was insufficient to support the verdict.

1. Repealed by Acts 1976, P.L. 148, § 24. For present law, see I.C. 35–43–4–1 to 35–43–4–5 (Burns Code Ed. 1979).

The record reveals the following: George Darnell, after getting off work on the evening of June 9, 1977, discovered his 1971 Mercury Marquis stolen. At approximately 3:00 P.M. the next afternoon, Darnell's automobile was found by police in the 2800 block of Priscilla Street, in Marion County. The automobile was in a stripped condition without tires or wheels. The trunk was broken open, the door panels were ripped out, and a stereo radio was missing. While investigating the stripped 1971 Mercury, Officer John Readle observed a 1966 black Oldsmobile station wagon parked approximately forty or fifty feet away. Two men, identified at trial by Readle as Gaddie and Marshall Williams, were in the station wagon engaged in activity described by Readle as "either exercising themselves by getting in and out of the vehicle at irregular intervals or . . . working on the vehicle."

Readle had the Mercury towed to the Interstate Wrecking Company, where Darnell identified the automobile. Readle returned to the location where the Mercury had been found and observed the black station wagon still parked. Readle continued to patrol the neighborhood and, upon passing the location for the third time, noticed that the station wagon was gone. Readle thereafter discovered the station wagon being driven about 5:00 P.M. in the 2800 block of Forest Manor Avenue. Determining by police communication that the license plate was not registered to that vehicle, Readle stopped the station wagon. During his investigation, Readle observed automobile tires mounted on wheels, radio gear, wires and speakers, and a stereo radio in the back of the station wagon. Gaddie, the owner of the vehicle, was driving and Marshall Williams was a passenger. Darnell was called to the scene whereupon he identified the stereo radio as the one originally in his 1971 Mercury.

Defendant's witness Marshall Williams, who was not charged in the present case, but who was serving a prison term on another conviction, testified that he phoned Gaddie on the day in question and asked to be picked up at the home of Gaddie's girlfriend. Williams stated that, upon Gaddie's arrival, he placed in Gaddie's car a stereo radio which Gaddie's girlfriend had asked Williams "to get rid of". Williams further testified that he placed no other items in the vehicle, nor were any other items in fact in the vehicle. Williams also denied ever seeing Darnell's 1971 Mercury, although he admitted being in the area at the time the stripped Mercury was discovered.

Gaddie took the stand and testified that Williams placed the stereo radio, as well as the automobile tires and radio gear, into the automobile. Gaddie denied any knowledge that the items were stolen.

Gaddie specifically contends that there is no evidence indicating that he knew the property found in his automobile was stolen. This assertion is premised on the erroneous assumption that he was charged, tried and convicted for receiving stolen property under I.C. 35–17–5–3(1)(f).[2]

2. I.C. 35–17–5–3 provides in full:

"Theft in general.—A person commits theft when he (1) knowingly:
(a) obtains or exerts unauthorized control over property of the owner; or
(b) obtains by deception control over property of the owner or a signature to any written instrument; or
(c) alters, replaces, transfers or substitutes without authorization of the owner any label, price tag or price marking upon any property or merchandise displayed or offered for sale by any mercantile establishment, as defined by IC 1971, 35–3–2–4(c); or
(d) transfers without authorization of the owner any property or merchandise dis-

played or offered for sale by any mercantile establishment, as defined by IC 1971, 35–3–2–4(c) from the package, bag or container in or on which such product or merchandise is displayed, to any other package, bag, or container; or
(e) obtains by threat control over property of the owner or a signature to any written instrument; or
(f) obtains control over stolen property knowing the property to have been stolen by another, which knowledge may be inferred from the possession of such stolen property, wherever the theft may have occurred; or
(g) brings into this state property over which he has obtained control by theft, wherever the theft may have occurred; and

The information, however, charges Gaddie in language drawn from subsection (1)(a) of that statute, as follows:

"BE IT REMEMBERED, That, on this day before me, JAMES F. KELLEY Prosecuting Attorney of the Nineteenth Judicial Circuit, personally came WILLIAM W. WHITE who, being duly sworn, upon his oath says that ROBERT ALLEN GADDIE on or about the 10th day of JUNE, A.D. 1977, at and in the County of Marion in the State of Indiana, committed the crime of theft in that he knowingly, unlawfully, and feloniously exerted unauthorized control over property of GEORGE DARNELL to-wit: A Ford Motor Company Stereo Radio, of the value of TWO HUNDRED FIFTY DOLLARS AND NO CENTS ($250.00), intending to deprive GEORGE DARNELL of the use and benefit of said property . . . ."

The jury was instructed pursuant to subsection (1)(a), and it is apparent from the record that the State proceeded under the theory that Gaddie participated in the actual theft of the stolen property.

Gaddie cites *Miller v. State* (1968) 250 Ind. 338, 236 N.E.2d 173, and *Wilson v. State* (2d Dist.1973) 159 Ind.App. 130, 304 N.E.2d 824, for the proposition that knowledge of the stolen character of property may not be inferred from its possession alone.[3] In *Miller v. State, supra*, the defendant was charged under Ind.Ann.Stat. § 10–3030(1)(d) (Burns Code Ed.Supp.1967), the statutory forerunner of I.C. 35–17–5–3(1)(f). In *Wilson v. State, supra*, although the defendant was charged under subsection (1)(a) of the same statute, this court ignored the "technical" charge because it was determined that, in actuality, the State intended to prove a violation under subsection (1)(f). In *Wilson*, we thus applied the following rule set forth in *Miller*, which Gaddie contends is here applicable:

" . . . While it is true that the requisite knowledge that the goods are stolen may be proved or inferred from the circumstances surrounding the defendant's possession and use of the property in question, *Dobson v. State* (1960), 239 Ind. 673, 158 N.E.2d 455, it has long been the accepted law of this State that:

'The rule that the possession of stolen property, the proceeds of a larceny, soon after the commission of the offense, unless explained, is *prima facie* evidence of the guilt of the person in whose possession the property is found, does not apply to the offense of receiving stolen property.' *Bowers v. State* (1924) 196 Ind. 4, 146 N.E. 818 (citations omitted).

Therefore, since the possession of the goods, by itself, does not provide sufficient evidence that appellant had knowledge that the goods in question were stolen, we must determine from all the evidence, in compliance with *Wertheimer and Goldberg v. State, supra*, [201 Ind. 572, 169 N.E. 40,] whether there is substantial evidence of probative value from which the jury could have concluded or inferred beyond a reasonable doubt that every reasonable hypothesis of innocence in regard to such knowledge on the part

---

(2) either:
(a) intends to deprive the owner of the use or benefit of the property; or
(b) intends to deprive the owner of some part or all of the value, which value and ownership shall be inferred from the price tag or price marking on such merchandise or property, of any property or merchandise displayed or offered for sale by any mercantile establishment as defined by IC 1971, 35–3–2–4(c); or
(c) uses, conceals or abandons the property in such manner as knowingly to deprive the owner of such use or benefit; or
(d) uses, conceals or abandons the property knowing such use, concealment or abandonment probably will deprive the owner of such use or benefit."

3. Gaddie does not contest the fact that he was found in possession of the stolen goods. Thus, the issue here is not whether possession was established, but whether the particular possession here is a "circumstance" which will support Gaddie's conviction upon appellate scrutiny. *Compare Mims v. State* (1957) 236 Ind. 439, 444, 140 N.E.2d 878, 880; *with Young v. State* (1975) 264 Ind. 14, 332 N.E.2d 103; *and Turentine v. State* (2d Dist. 1979) Ind.App., 384 N.E.2d 1119.

of the appellant was excluded." 304 N.E.2d at 826. (Footnote omitted.)

*See also Pierce v. State* (2d Dist.1974) 161 Ind.App. 217, 315 N.E.2d 376; *Griffin v. State* (3d Dist.1978) Ind.App., 372 N.E.2d 497.

When, in contrast, the defendant is tried for the larceny type of theft, as embodied within subsection (1)(a), the rule concerning the effect of possession of recently stolen property was stated in *Freeling v. State* (2d Dist.1975) 167 Ind.App. 535, 338 N.E.2d 644, 647, quoting from *Durrett v. State* (1967) 249 Ind. 12, 14–15, 230 N.E.2d 595, 596 as follows:

‘ “ ‘Exclusive possession of property shown to have been stolen, shortly after the larceny, unquestionably is a circumstance to be considered by the jury, and if the proof is made that such larceny was recently committed and there is no evidence to explain the possession of the defendants, a larceny conviction based on such evidence will be sustained on appeal.’ *Mims et al. v. State* (1957) 236 Ind. 439, 444, 140 N.E.2d 878, 880; *Gilley et al. v. State* (1949) 227 Ind. 701, 88 N.E.2d 759.

Some argument is made in the brief that the defendant has no burden of proof in a criminal case. We have here no such question before us. In every successful criminal prosecution there usually comes a time when the State establishes a *prima facie* case, giving consideration to all legitimate and reasonable inferences that may be drawn from the facts presented, which proves beyond a reasonable doubt that the defendant is guilty. At that point, unless the defendant sees fit to come forward with proof to rebut the *prima facie* case and convince the jury he is innocent, the jury, from the evidence presented to it, may convict the defendant. It appears to us that was the circumstance here. The State presented such a case. It thereby sustained the burden of proof. The defendant failed to offer any explanation that convinced the jury." ’

Thus, in terms of what inference may be drawn from the possession of stolen property, our Supreme Court has apparently established and adhered to a distinction between violations specifically defined under I.C. 35–17–5–3(1)(a) (formerly simple theft or larceny) and those specifically defined under I.C. 35–17–5–3(1)(f) (formerly receiving stolen property). *See, e. g., Ward v. State* (1973) 260 Ind. 217, 294 N.E.2d 796; *Miller v. State, supra,* 236 N.E.2d 173.

We note, however, that the acceptance and application of this distinction has been less than uniform. The use of the common law inference has been criticized even in its application to larceny and burglary. See the dissents in *Gann v. State* (1971) 256 Ind. 429, 269 N.E.2d 381; *Vaughn v. State* (1971) 255 Ind. 678, 266 N.E.2d 219; and *Bolton v. State* (1970) 254 Ind. 648, 261 N.E.2d 841.[4] Furthermore, in *Wilson v. State, supra,* 304

4. The question of the validity of the common law inference in the context of the sufficiency of the evidence to support a conviction must be distinguished from the question of the propriety of instructing the jury as to the availability or existence of the inference. The dichotomy was explained in *Dedrick v. State* (1936) 210 Ind. 259, 278–79, 2 N.E.2d 409, 418:

"Exclusive possession by the defendant of recently stolen goods is a circumstance to be considered by the jury, and, if the state proves that the goods in question have been recently stolen, and soon thereafter were found in the possession of defendant, and there is no evidence in the record explaining the possession of the defendant, and if the jury under proper instruction concludes that the defendant was guilty, such evidence would be sufficient to sustain the verdict of the jury upon appeal. We do not think that a court has any right or any power to instruct the jury that the proof of certain facts raises a presumption against the defendant in a criminal case, but the court should more properly instruct the jury that all facts and circumstances as shown by the evidence should be considered by them in determining the guilt or innocence of the defendant." Compare *Gann v. State, supra,* 269 N.E.2d 381, *with Phillips v. State* (2d Dist.1978) Ind. App., 377 N.E.2d 666, *Underwood v. State* (1st Dist.1977) Ind.App., 367 N.E.2d 4 (modified in part by *Sansom v. State* (1977) 267 Ind. 33, 366 N.E.2d 1171, which case was overruled on other grounds by *Elmore v. State* (1978) Ind., 382 N.E.2d 893) *and Abel v. State* (1st Dist.1975) 165 Ind.App. 664, 333 N.E.2d 848.

N.E.2d 824, this court apparently impliedly rejected the applicability of the common law inference to either larceny or receiving stolen property. Although the defendant in *Wilson*, who was charged under subsection (1)(a), was found in possession of recently stolen property, we reversed, stating that "the State . . . proved neither a crime under (a) or (f), the element of *scienter*, common to both, having never been proven." 304 N.E.2d at 826, n.1.[5]

At the other extreme of the spectrum, however, this Court has not always recognized a distinction. In *Ruhl and Young v. State* (3d Dist.1974) 162 Ind.App. 280, 319 N.E.2d 347, the Third District applied the inference from possession of recently stolen property to affirm convictions for a (1)(f) offense.[6] The court cited only *Lawrence v. State* (1963) 244 Ind. 305, 192 N.E.2d 629, a larceny case. In *Mack v. State* (3d Dist.

1978) Ind.App., 380 N.E.2d 592, the defendant was charged with and tried for the larceny type of theft. The court correctly applied the rule concerning the inference to be drawn from possession of stolen property for this type theft, but proceeded to state that "[i]n Indiana, the unexplained possession of recently stolen property may give rise to the inference that the possessor either committed the theft *or knew that the property had been stolen*." *Id.* at 598 (emphasis supplied). This dictum must be taken to mean that mere possession of stolen property will support an inference of knowledge of its character for the *receiving type theft*, since to state that one who actually commits a theft knows of the property's stolen character is to utter a truism.

The court in *Mack* cited *Linnemeier v. State* (3d Dist.1975) 165 Ind.App. 31, 330

---

**5.** In retrospect, our analysis in *Wilson* may have confused and misinterpreted the precise function of the inference rule with respect to larceny and receiving stolen property. With the latter offense, the inference, if allowed, would permit the conclusion that the defendant knew the items were *stolen*. In larceny, such inference is unnecessary, since it is a given fact that one who commits the actual theft knows that the item is stolen. The inference in larceny, therefore, is that the act was committed by the defendant. Thus, our statement in *Wilson* concerning the applicability of the inference to the "element of *scienter*, common to both", is misleading.

It is in this context that the precise definition of "possession", as contemplated in the common law inference rule, becomes of paramount importance. If "possession" is defined in terms of "physical control with the intent to exercise such control on his own behalf", *Williams v. State* (1969) 253 Ind. 316, 321, 253 N.E.2d 242, 245, then the "knowledge" requirement under section (1), common to both subsections (1)(a) and (1)(f), must be established with no assistance from the inference. That is, before the inference from possession is allowed, the "intent to exercise control", which necessarily incorporates "knowledge" that one has obtained control, must be established.

Thus, in *Young v. State, supra,* 332 N.E.2d 103, the Supreme Court never reached the question whether knowledge of the stolen character of certain items could be inferred from the fact that they were found in the back seat of defendant's car. The court held that the State failed to prove that the defendant knew he had obtained control over the items. In other words, since there was no showing of

"intent to obtain control", there was no "possession"; thus the application of the inference was never an issue.

The view expressed in the dissent of Judge Shields is deserving of attention and respect. The "exclusive possession" inference is extremely difficult in application, as evidenced by the case before us. The difficulty is, perhaps in part, explained by the view that the inference is one created wholly out of policy considerations and practical necessity rather than out of logic or out of rational association between the facts proved and the inference derived from those facts. *Cf. County Court of Ulster County v. Allen* (1979) 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777.

It is perhaps for this reason that the views of Judge Shields and those of the majority here clash upon such factors as "exclusivity" of possession in terms of joint access and control, and in terms of "conspiracy, confederacy or concerted actions" as a necessary element of "joint exclusive possession".

One might question the fact than an inference of knowledge of the stolen character of property, for purposes of a "receiving stolen property" conviction, is *not* permissible from unexplained "exclusive possession of recently stolen property", while it is permissible to infer that such a possessor is the actual thief of that property. Be that as it may, the law in Indiana remains in that posture. If a change is to be made, it must be by our Supreme Court.

**6.** Upon transfer, our Supreme Court reversed Young's conviction, having denied the co-defendant Ruhl's petition for transfer. *Young v. State, supra,* 332 N.E.2d 103. See Footnote 5.

N.E.2d 373, *Taylor v. State* (1972) 259 Ind. 25, 284 N.E.2d 775. In *Linnemeier*, the defendant was charged, tried and convicted under the theory that he had engaged in the actual theft. The court therein stated: "Appellant acknowledges the existence of the rule that unexplained possession of recently stolen property may give rise to an inference that the possessor either committed the theft or had knowledge of the character of the property. *Hancock v. State* (1971) 256 Ind. 337, 268 N.E.2d 743; *Bolton v. State* (1970) 254 Ind. 648, 261 N.E.2d 841." *Id.*, 330 N.E.2d at 376.

However, *Taylor, Hancock* and *Bolton* all deal with defendants who were charged, tried and convicted under the theory that they had engaged in the actual theft of the property in question. Thus, we fail to find authority for the Third District's apparent position in *Ruhl, Mack* and *Linnemeier* that knowledge of the stolen nature of property may be inferred from its mere possession. In point of fact, the Third District's statement in those cases contradicts its holding in *Stocklin v. State* (3d Dist.1976) Ind.App., 345 N.E.2d 863.

Apparently cognizant of, and possibly dissatisfied with, this common law distinction between larceny and receiving stolen property, the legislature amended subsection (1)(f) in 1971[7] to provide that knowledge that property was stolen by another "may be inferred from possession of such stolen property, . . . ." The Third District nevertheless chose not to apply this provision and continued to apply the common law distinction, stating in *Stocklin v. State, supra*, at 864:

"Although IC 1971, 35–17–5–3(1)(f) states that 'knowledge may be inferred from the possession of such stolen property . . . ,' possession of stolen goods, *by itself*, does not provide sufficient evidence that the accused had knowledge that the goods in question were stolen. *Miller v. State* (1968), 250 Ind. 338, 236 N.E.2d 173; *Wilson v. State,* (1973), 159 Ind.App. 130, 304 N.E.2d 824; *see Hargraves v. State* (1972), 153 Ind.App. 543, 288 N.E.2d 194." (Original emphasis.)[8]

The application, *vel non*, to be accorded this statutory provision by our Supreme Court has yet to be determined. Its most recent decision[9] expressly dealing with the inapplicability of the common law inference to the offense of receiving stolen property, in the sufficiency of the evidence context, was *Miller v. State, supra*, 236 N.E.2d 173, which was rendered prior to the legislative amendment.[10]

7. Acts 1971, P.L. 458, § 1.

8. Of the cases cited for support by the court in *Stocklin*, only *Wilson v. State, supra*, 304 N.E.2d 824, even remotely supports the nonrecognition of the statutory language allowing the inference. Although *Wilson* was rendered subsequent to the 1971 amendment to section (1)(f), the decision only impliedly dismisses the applicability of the statutory-supplied inference for a (1)(f) offense. *Miller v. State, supra*, 236 N.E.2d 173, as earlier noted, was rendered prior to the legislative amendment, and *Hargraves v. State* (1st Dist.1972) 153 Ind.App. 543, 288 N.E.2d 194, dealt with a (1)(a) offense.

9. The Third District in *Griffin v. State, supra*, 372 N.E.2d 497, cited *Young v. State, supra*, 332 N.E.2d 103, for the proposition that exclusive unexplained possession of stolen property would not support a conviction for receiving stolen goods. A close reading of *Young*, however, indicates that it turned upon the failure of the State to prove the defendant knew he had control over the items. It did not deal with whether the defendant knew that the goods were stolen. See Footnote 5, *supra*.

Another decision by our Supreme Court, rendered subsequent to *Miller v. State, supra*, 236 N.E.2d 173, but which applied I.C. 35–17–5–3 prior to the amendment of section (1)(f), affirmed a conviction for receiving stolen property. *Cochran v. State* (1970) 255 Ind. 374, 265 N.E.2d 19. The Court there, however, did not expressly deal with the inference from possession rule since the conviction was supported by additional circumstantial evidence apart from the defendant's possession of the stolen items. Thus, *Miller v. State* remains the Supreme Court's definitive statement concerning the inapplicability of the inference from possession of stolen property to the offense of receiving stolen property.

10. We observe that, subsequent to the Indiana Supreme Court's decision in *Miller* and the legislature's amendment to (1)(f) codifying the inference for the receiving offense, the United States Supreme Court in *Barnes v. United States* (1973) 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380, sustained the constitutionality of the common law inference from the possession of stolen property for the offense of receiving stolen goods.

While we are unable to derive a satisfactory rationale for this distinction between receiving stolen property and larceny,[11] we feel compelled to apply the law in accordance with our Supreme Court's most recent holdings on the subject, *Miller v. State,*

> While not directly applicable here, of further note is the fact that the *Barnes* court also recognized the propriety of instructing the jury concerning the availability of the inference. *Id.* at 839–47, 93 S.Ct. at 2359–2364. *See also County Court of Ulster County v. Allen, supra,* 99 S.Ct. 2213.

11. One theory could be advanced. The refusal to apply the inference to the receiving type offense may have originated in a context where a defendant was charged with both larceny and receiving stolen property. In such situation, the decision, with respect to the inference, is not only "guilty or not guilty", but also "larceny or receiving stolen goods". As stated in *Wertheimer v. State* (1929) 201 Ind. 572, 581–82, 169 N.E. 40, 44, n.1: "Where . . . there is no evidence to show that the theft was committed by some person other than the defendant charged with receiving the goods, such possession of goods recently stolen *raises a presumption of theft*, rather than of receiving stolen goods, and is not *prima facie* evidence that the possessor is guilty of receiving stolen goods." (Emphasis supplied.)

In light of the statement in *Wertheimer*, the refusal to apply the inference where the defendant is charged only with receiving stolen goods may be a distortion of the original rationale for distinction. *Compare Commonwealth v. Adams* (1978) 479 Pa. 508, 388 A.2d 1046, wherein the inference was allowed despite the absence of evidence indicating the theft was committed by another.

> *See Note, The Presumption Arising From The Possession Of Stolen Property: The Rule In Indiana,* 6 Ind.L.Rev. 73, 91, n.95 (1972), for a criticism of the distinction. *See also* Footnote 5, *supra.*

12. In *Coates v. State* (1967) 249 Ind. 357, 229 N.E.2d 640, it was held that subsections (1)(a) and (1)(f) [then (1)(d)] related to separate and distinct offenses. The court in *Coates* stated that there exists a failure of proof where a defendant is charged under (1)(f) but the evidence indicates only a (1)(a) offense. *See also Mentzer v. State* (3d Dist.1975) 156 Ind.App. 295, 296 N.E.2d 136. An impermissible variance will also be found where an affidavit charges theft under (1)(b) and a verdict is rendered under (1)(a). *Lawrence v. State* (1968) 250 Ind. 161, 235 N.E.2d 198.

Apparently, however, a charge may be brought under (1)(a) and a conviction may be obtained for a specific offense defined within the various other subsections of I.C. 35–17–5–

*supra,* 236 N.E.2d 173. *See also Capps v. State* (1976) 258 Ind. 565, 282 N.E.2d 833, *supra* note 8; *Cochran v. State* (1970) 255 Ind. 374, 265 N.E.2d 19, *supra* note 8, notwithstanding that anomalous results are possible.[12]

3. In *Green v. State* (1972) 258 Ind. 481, 282 N.E.2d 548, our Supreme Court held that the prosecution has the option of charging in general under (1)(a) or of bringing a specific charge under the other subsections. The court therein stated at 550:

> "In our opinion, the prosecuting attorney has the option of determining whether or not he desires to make the charge specific under some specified section of the statute, or to make the charge general in nature when the evidence is not certain as to the methods used to gain control. The broadness of Paragraph (a) is no greater than the statute which originally defined larceny, or its definition under the common law.

> . . . Contrary to the statement that we are without legislative guidance in *Coates v. State* (1968) 249 Ind. 357, 359, 229 N.E.2d 640, 641, we believe that the legislative intent and the guide to interpretation is set out in the statute. The fact that there are other included offenses which are more narrowly defined does not prohibit the state from prosecuting under a broader provision of the statute, such as the one in this case which covers any 'unauthorized control of the property of the owner.' "

The particular language required to effect a general charge under (1)(a), and thus avoid a specific charge, is problematical. *Compare Mentzer v. State, supra,* 296 N.E.2d 136; *Young v. State, supra,* 332 N.E.2d 103.

Given this scenario, the question arises as to how and when the inference from possession of stolen property will apply. May the prosecution charge under (1)(a) to obtain the inference even though it intends to prove a (1)(f) offense? Or must the reviewing court, in determining the sufficiency of the evidence, look behind the charge to the evidence in order to determine the availability of the inference?

The decisions weighing on this question add no enlightenment, and some even appear to be at odds with the *Green* decision.

In *Freeling v. State, supra,* 338 N.E.2d 644, although the body of the affidavit read in the language of (1)(a), the evidence and the obvious intent of both the prosecutor and defense attorney was to litigate a (1)(f) offense. Nevertheless, this court applied the common law inference for larceny, stating that it was the *charge* which controls. Also, in *Hargraves v. State, supra,* 288 N.E.2d 194, although there appeared to be evidence suggesting a (1)(f)

Gaddie's possession of the stolen property in the case at bar falls within the rule. The fact that Gaddie offered an explanation does not automatically "explain" the possession so as to render the inference impermissible. The trier of fact is entitled to disbelieve the defendant's story. *Ward v. State, supra*, 294 N.E.2d 796; *Linnemeier v. State, supra*, 330 N.E.2d 373. Thus, as earlier stated, the totality of the circumstances permits a conclusion of guilt.

Furthermore, the fact that Gaddie was not alone in the car when possession was discovered does not invalidate the inference.

Both Gaddie and Marshall were observed at the location of the stripped automobile. Approximately one and one-half hours later, they were discovered in possession of stolen property taken from the stripped vehicle. Although Gaddie supplied an explanation for the possession, the jury was entitled to disbelieve such explanation, especially in light of the discrepancies in Gaddie's and Marshall's respective versions. The possession of the stolen items, coupled with the additional evidence linking both men to the location of the stripped vehicle soon after its discovery,[13] in light of the common law inference, sufficiently supports Gaddie's conviction of theft under I.C. 35–17–5–3(1)(a). *See Bolton v. State, supra*, 261 N.E.2d 841; *Lawrence v. State, supra*, 192 N.E.2d 629; *Mims v. State* (1957) 236 Ind. 439, 140 N.E.2d 878, *supra* note 3; *Gilley v. State* (1949) 227 Ind. 701, 88 N.E.2d 759; *Moore v. State* (3d Dist.1979) Ind.App., 395 N.E.2d 1280.

BUCHANAN, C. J., concurs.

SHIELDS, J., dissents with opinion.

SHIELDS, Judge, dissenting.

I dissent.

I agree with Gaddie that the evidence is insufficient to support his conviction of theft of the stereo radio. Contrary to the majority's position, Gaddie's possession of the stolen property does not fall within the "exclusive possession of recently stolen property" inference. His possession of the radio was not exclusive, nor is there any evidence of a conspiracy, confederacy or concerted action between Gaddie and Marshall since the time of the theft to support a joint exclusive possession. Guilt may not be inferred from mere possession of recently stolen property.

Nor do I believe the evidence linking Gaddie and Marshall to the location of the stripped vehicle soon after its discovery sufficiently incriminating as to permit a reasonable inference by the factfinder that Gaddie had knowing control and the intent to deprive. *Strode v. State* (2d Dist.1980) Ind.App., 400 N.E.2d 183. After all, Gaddie and Marshall were merely observed in and out of Gaddie's vehicle parked approximately forty or fifty feet from Darnell's stripped vehicle a *day* after the vehicle was stolen. The majority must assume the stereo radio was removed from Darnell's car at that time and place because joint exclusive possession could then be found. If there were any evidence of that, I would agree with the majority. However, there is not and I must dissent.

---

offense, the court reversed because "a crime under (1)(a) had not been proven." Yet, compare *Wilson v. State, supra*, 304 N.E.2d 824, and *Pierce v. State, supra*, 315 N.E.2d 376, where, although the charge in each case was (1)(a), this court nevertheless proceeded to review the sufficiency of the evidence for a (1)(f) offense, thus seemingly following the *Green* decision.

**13.** In *Mims v. State, supra*, 140 N.E.2d 878, the court, when presented with evidence of defendants' proximity to the scene of a recently committed crime together with evidence of their possession of the stolen items, found it "difficult to contemplate a state of facts giving rise to a more probable likelihood of guilt." *Id.* at 880.