Napoleon ANDERSON, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 2–117 8A 375.

Court of Appeals of Indiana,
Second District.

June 30, 1980.

Rehearing Denied Aug. 7, 1980.

Philip R. Melangton, Jr., Melangton &
Hughes, Indianapolis, for appellant.

Theodore L. Sendak, Atty. Gen., Gordon R. Medlicott, Deputy Atty. Gen., Indianapolis, for appellee.

SHIELDS, Judge.

Defendant-appellant Napoleon Anderson appeals his conviction by court trial of Theft, IC 35–17–5–3 (Burns Code Ed.), preserving several issues for our review. Due to our resolution of this appeal, however, we only address Anderson's contention the judgment is not supported by sufficient evidence.

We reverse.

■ When reviewing the sufficiency of the evidence, this Court considers the evidence most favorable to the verdict, together with all reasonable inferences which may be drawn from that evidence. *McCormick v. State*, (1978) Ind.App., 382 N.E.2d 172. If there is substantial evidence of probative value to support each element of the offense, the judgment will be affirmed. *Taylor v. State*, (1979) Ind.App., 391 N.E.2d 1182. Moreover, in reviewing the sufficiency of the evidence, this Court does not judge the credibility of witnesses nor weigh the evidence. *McCormick v. State, supra.*

The evidence most favorable to the State reveals the following: On September 2, 1977, Detective Gerald Hilligoss and Sergeant Allen Rackemann, of the Indianapolis Police Department, along with Sergeant Bruce, of the Indiana State Police, proceeded to 1402 N. West Street, Indianapolis, Marion County, Indiana to execute a warrant authorizing a search of the premises, a used car lot, for Indiana vehicle inspection stickers. Located at the above address was Anderson's used car lot, A & B Car Lot, comprised of a "lot" area where automobiles were on display, and a concrete block building containing an office in the front and a room in the rear used for storage.

Hilligoss met Anderson at the door of the building and read the search warrant to him, after which the other officers proceeded to search the premises. The search produced thirteen (13) blank inspection stickers found lying amongst letters, bills, etc. in an open shelf, described as one (1) of six (6) "cubbyholes" above a desk in the back room; and two (2) inspection stickers Rackemann scraped off autos parked on the front row of the lot. Anderson was then read his rights and placed under arrest for possession of stolen property.

First Sergeant Edwin Green, supervisor of the Indiana State Police Vehicle Inspection program, testified that only garages, service stations, and individual mechanics issued a license by his department have authority to inspect vehicles in Indiana, and a check of his records revealed that neither A & B Car Lot nor Napoleon Anderson had been issued such a license.

Over objection Green also testified to the following: His records revealed State's exhibits numbered five (5) through seven (7) (stickers numbered 5001570, 5001573, and 5001574) were issued as part of a series to station number 8752, Joey's Shell, 1005 N. Shadeland, Indianapolis, Indiana; State's exhibits numbered eight (8) through eleven (11) (stickers numbered 5010347, 5010349, 5010348, and 5010350) were issued to station number 8264, AyrWay's, 1300 E. 86th Street, Indianapolis, Indiana; State's exhibits numbered twelve (12) through fifteen (15) (stickers numbered 2468993, 2468995, 2468996, and 2468998) were issued to station number 7002, Bob's Auto Repair, R.R. 6, Decatur, Indiana; State's exhibit number seventeen (17) (sticker number 7213448) was issued to station number 7238, Satterfield's Service Center, 3001 N. Meridian Street, Indianapolis, Indiana; and State's exhibit number eighteen (18) (sticker number 6809252) was issued to Thompson's Standard, 2317 Wheeling, Muncie, Indiana. No one other than the stations to which said stickers were issued had the authority to possess the stickers. The State of Indiana is the owner of the inspection stickers and the stickers are valued at fifty cents (50¢) apiece. State's exhibits numbered five (5) through seven (7) (stickers numbered 5001570, 5001573, and 5001574) were part of a group of forty-five (45) inspection stickers reported stolen during a burglary of Joey's Shell on August 20, 1976.

Anderson argues the evidence is insufficient to sustain his theft conviction under either IC 35–17–5–3(1)(a) and (2)(a) or IC 35–17–5–3(1)(f) and (2)(a) because there is no evidence Anderson "stole" the stickers or knew they had been stolen by another.

In opposition, the State contends Anderson's possession or control of the stickers was unauthorized and, therefore, sufficient to sustain his conviction under IC 35–17–5–3, relying principally upon Green's testimony that only licensed individuals and businesses are authorized to possess or control vehicle inspection stickers and neither Anderson nor his used car lot have such a license; and that the stickers in the case at bar were issued to specific licensed stations and reported stolen.

■ Although the allegations in the information reveal the charge alleged is laid under subsection (1)(a) and (2)(a) of IC 35–17–5–3, the general theft provision, the State may prove a violation of subsection (1)(f) and (2)(a), the provision on receiving or possession of stolen property.[1] Thus we consider both offenses and arrive at the conclusion there was no evidence from which the trial court could reasonably infer beyond a reasonable doubt that Anderson either stole the stickers himself (or acted in concert with the actual thief) contrary to IC 35–17–5–3(1)(a) or that he knew the stickers were stolen, an essential element of IC 35–17–5–3(1)(f).

■ Contrary to Green's testimony on questions of law, the vehicle inspection law does not criminalize the possession of vehicle inspection stickers nor in any other manner make their possession unlawful.[2] In addition, the evidence is that only three (3) of the stickers were reported stolen, a report made over one year prior to the date of Anderson's charged offense. It is within this framework that we review this trial court decision.

■ Contrary to the State's position, this conviction cannot be sustained merely upon proof of Anderson's control over the stickers. Specifically, under subsection (1)(f) an essential element is knowledge the property was stolen by another. This record is totally devoid of any such evidence.

■ In this regard, knowledge of the stolen character of property may not be inferred solely from the unexplained possession of recently stolen property. *Miller v. State*, (1968) 250 Ind. 338, 236 N.E.2d 173; *Gaddie v. State*, (1980) Ind.App., 400 N.E.2d 788. Rather, such knowledge must be proved or inferred from all the circumstances surrounding the defendant's possession and use of the property in question. *Wilson*

---

1. *Compare Coates v. State*, (1967) 249 Ind. 357, 229 N.E.2d 640 (holding what is now subsections [1][a] and [1][f] "present two separate crimes" and reversed for "failure of proof" since the State charged Coates with subsection [1][f] receiving or possession of stolen property but proved *only subsection [1][a] general theft*) *and Ross v. State*, (1825) 1 Blackf. 390 (an indictment for larceny was not supported by evidence the defendant had received or purchased the goods knowing them to be stolen) *with Green v. State*, (1972) 258 Ind. 481, 282 N.E.2d 548, *and Elmore v. State*, (1978) Ind. App., 375 N.E.2d 660, *vacated on other grounds*, Ind., 382 N.E.2d 893 (facts sufficient to sustain a conviction of receiving or possession of stolen property as defined by subsection [1][f] and [2][a] is also *prima facie* proof of the general charge of obtaining and exerting unauthorized control, as theft is defined generally in subsection [1][a] and [2][a].

2. While it is true, as the State contends, nothing in IC 1971, §§ 9–8–11–1 through 9–8–11–15 (Burns Code Ed.) specifically "authorizes" possession of inspection stickers by one other than licensed stations and mechanics, it is also true that nothing in said statute specifically prohibits possession of inspection stickers by those other than licensed stations and mechanics.

Furthermore, there is an implied prohibition, in IC 9–8–11–13, against inspecting a vehicle without a license; however, there was no evidence indicating Anderson inspected vehicles, issued certificates of inspection or affixed stickers to automobiles. Although Rackemann scraped two (2) inspection stickers off windshields of automobiles parked in the front row of the lot, there was no evidence that Anderson had affixed the stickers nor evidence indicating whether these vehicles were owned by A & B Car Lot, or were owned by others and merely being sold on a consignment basis; indeed, there was no evidence as to whether these automobiles were even being offered for sale or, rather, were parked there by customers while awaiting repairs.

*v. State*, (1973) 159 Ind.App. 130, 304 N.E.2d 824. In the case *sub judice*, the evidence at best merely raises a suspicion Anderson knew the inspection stickers were stolen by another, which is not sufficient to support a criminal conviction.

In *Pierce v. State*, (1974) 161 Ind.App. 217, 315 N.E.2d 376, this Court, confronting a situation factually similar to the case *sub judice*, noted:

> " 'To conclude from the sparse facts in this record that appellant had guilty knowledge would be to conclude guilt where only a possibility of guilt was proved'. . . .
>
> " 'The circumstantial evidence merely raises a *suspicion* that defendant knew the car was stolen. "It is not sufficient that the evidence merely tends to support . . . the material facts in issue . . or that it establishes suspicion of guilty." ' "

(Original emphasis) (citations omitted). 161 Ind.App., at 221, 315 N.E.2d, at 379.

Subsection (1)(a) requires knowing exertion of *unauthorized* control over property of another. The State misinterprets this subsection. Its burden of proof includes the elements, knowing unauthorized control. Green's statement concerning Anderson's possession being unauthorized is incorrect and, as such, is insufficient to establish a knowing, unauthorized control.

■ With the exception of the testimony received over objection concerning the "reported" theft of State's exhibits numbered five (5), six (6), and seven (7) from Joey's Shell, the record is devoid of evidence indicating any of the remaining inspection stickers were *ever* stolen by anyone.[3] The fact the three stickers were reported stolen over a year ago is also insufficient. It is only the possession of recently stolen property which permits the inference of unauthorized control.

---

**3.** To the contrary, the *only* evidence relating to the disposition of the other inspection stickers subsequent to their issuance by the State to the "authorized" persons or establishments is found on sticker number 7213488 itself. This sticker, State's exhibit number seventeen (17), was one (1) of the two (2) Rackemann scraped off the *windshields* of automobiles parked on

The State failed to prove its case and, therefore, we reverse the trial court's judgment and remand with instructions to enter a judgment of acquittal. *Burks v. United States*, (1978) 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1.

MILLER, P. J. (sitting by designation), and SULLIVAN, J., concur.

the front row of the lot and testimony revealed it had been issued to Satterfield's Service Center. The back side of this sticker contains handwritten entries showing that on April 29, 1977 the vehicle with identification number 386690M292777, with an odometer reading of 87057 miles, was inspected at station number 7238 by K. Satterfield.